IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH CHARLESTON and LARRY CHARLESTON (w/h), | : <br> : <br> : |
| Plaintiffs, | : CIVIL ACTION <br> : |
| v. | : No. 08-5889 <br> : |
| SALON SECRETS DAY SPA, INC., et al., | : <br> : |
| Defendants. | : <br> : |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                 **JUNE 1, 2009**

      Presently before the Court are Motions to Dismiss and Motions to Strike filed by Defendants Salon Secrets Day Spa, Inc. ("Salon Secrets"), Pamela A. Troyan ("Troyan"), and Dr. Thomas J. Burke, D.O. ("Dr. Burke") (collectively "Defendants"). For the following reasons, the Motions to Strike will be granted and the Motions to Dismiss will be denied.

**I.    FACTS**

      Plaintiffs Larry and Deborah Charleston ("the Charlestons") claim that on February 10, 2007, Deborah Charleston suffered disfiguring facial burns as a result of a laser hair removal procedure performed at Salon Secrets by Defendant Barbara Lindner ("Lindner"), a salon aesthetician. Defendant Troyan is the owner of Salon Secrets. The Charlestons aver that Defendant PT Lasers, a limited liability company that leased the laser, is co-owned by Defendants Troyan and Dr. Burke.

      The Charlestons allege that Troyan partnered with Dr. Burke to acquire a prescription

medical device to provide laser hair removal services at Salon Secrets. The Charlestons assert that the device can only be sold to or on the order of a licensed physician. The Charlestons further contend that laser hair removal is a medical procedure which, under Pennsylvania law, requires a licensed physician to either perform the procedure himself or delegate the procedure to a trained technician. The Charlestons assert, however, that Lindner was unsupervised when she performed the laser hair removal procedure.

The Charlestons' Complaint alleges two different factual scenarios. Under one set of alleged facts, after Troyan used Dr. Burke's license as a means to acquire the laser device for Salon Secrets in 2004, Dr. Burke resigned from his position at Salon Secrets in 2006, allowed his Pennsylvania medical license to lapse, and cancelled his malpractice insurance. Troyan nonetheless continued to allow her employees to use the medical laser to treat clients without any medical supervision. The Charlestons further allege that Dr. Burke knew or should have known of this improper use of his laser, as he continued to pick up and drop off the laser at Salon Secrets even after his resignation.

Under an alternative set of alleged facts, based on verified information obtained from Troyan, Dr. Burke did not resign from Salon Secrets, but continued to serve as Salon Secrets's medical director, and was employed in that capacity at the time of Charleston's injury in February 2007. The Charlestons claim that Dr. Burke's Pennsylvania medical license had expired months before in October 2006, and thus, if it is true that he served as Salon Secrets's medical director and supervising physician at the time of the accident, then he is responsible for the harmed caused to Charleston by his agent, Lindner, as well as for the consequences of practicing medicine in this Commonwealth without a license and without insurance.

On December 19, 2008, the Charlestons filed a Complaint in this Court, alleging that Defendants are liable for the burns caused to Charleston's face when Lindner disregarded the instruction manual for the laser and used it on a dark-skinned patient without first testing the laser's strength.  They further argue that by failing to wait the mandatory twenty-four to forty-eight hours to complete the skin test required for dark-skinned patients like Charleston, Linder's use of the laser caused second-degree burns on her face.  The Charlestons assert that if Linder had been working under the supervision of a licensed physician, she would have first performed a skin test in a small, unnoticeable area, and then two days later, the area would have been inspected to determine if Charleston was even a candidate for the procedure.  However, because Linder was unsupervised, these procedures were not followed.  The Charlestons also claim that because Charleston had grey and white hair, she was probably not even a candidate at all, according to the black box warnings contained in the instruction manual.

On March 16, 2009, the Charlestons filed a Motion to Amend the Complaint.  On March 30, 2009, Dr. Burke filed a Motion to Strike and a Motion to Dismiss.  On March 31, 2009, Salon Secrets filed a Motion to Strike and a Motion to Dismiss.  On April 3, 2009, this Court granted the Charlestons' Motion to Amend the Complaint, and the Charlestons filed their Amended Complaint on that same date.  The amendments essentially corrected the paragraph numbering, and did not substantively alter the nature of the allegations which remain in dispute.  Defendants renewed their objections to the Amended Complaint by filing their respective Motions to Strike and Motions to Dismiss the Amended Complaint.  To date, Lindner has filed an Answer to the Complaint, and PT Lasers has not answered.

## II. STANDARDS OF REVIEW

### A. Motion to Strike

Federal Rule of Civil Procedure 12(f) states in relevant part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief." Del. Health Care. Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1291-92 (D. Del. 1995). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." Id.

District courts are afforded "considerable discretion" when addressing a motion to strike. See Woods v. ERA Med LLC, No. 08-2495, 2009 U.S. Dist. LEXIS 3965, at *32 (E.D. Pa. Jan. 21, 2009). Generally, motions to strike are not favored and "usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." River Rd. Dev. Corp. v. Carlson Corp. - Ne., No. 89-7037, 1990 U.S. Dist. LEXIS 6201, at *7 (E.D. Pa. May 23, 1990); see also DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007).

### B. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's

4

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007). Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

### A.   Motion to Strike

Defendants argue that the Charlestons have included "immaterial, impertinent or scandalous matter" in violation of Federal Rule of Civil Procedure 12(f) at paragraphs 51, 53, 54, 55, 61, 63, 70, 71, 72 and elsewhere in their Complaint.[1]  Defendants assert that these paragraphs of the Complaint should be stricken because they reference the general public, discipline against non-parties whose conduct is unrelated to the instant cause of action, and numerous surveys, newsletters and marketing publications that do not pertain to the instant allegations.  Defendants further assert that these allegations have no possible relation to the controversy, may cause prejudice to Defendants and serve only to confuse the issues in the instant case.  The Charlestons argue, however, that the allegations pertaining to the growing medical spa industry, as well as the increasing reports of injured med-spa clients caused by untrained non-physicians, justify the negligence and punitive damages claim, as it was foreseeable that an unsupervised cosmetologist would end up severely burning a client who never should have been treated in the first place.

This Court finds that allegations referencing the general public, discipline against non-parties, and various surveys, newsletters and marketing publications bear no possible relation to the controversy here and may cause prejudice to the Defendants.  Such allegations are unrelated to the controversy because the Charlestons have not alleged that Defendants were ever aware of the specific information concerning the general public, the discipline against non-parties, or the

---

[1] Defendants Salon Secrets and Troyan also assert that paragraphs 48, 49, 50 and 52 should be stricken under Rule 12(f).

6

numerous surveys, newsletters and marketing publications.  Paragraph seventy-nine is the only paragraph alleging that any Defendant was aware of the growth of the medical spa industry. Defendants have not requested that this paragraph be stricken.  Therefore, paragraphs fifty, fifty-one and seventy-nine, which refer to the growth of the medical spa industry, are redundant. Further, this Court does not believe that paragraph forty-nine, which sets forth the various terms for a business entity that offers traditional spa treatments, has any essential or important relationship to the claim for relief.  Finally, with the exception of paragraph 48 (which contains the same information as paragraphs three, four and seventy-nine), these paragraphs do not in any way involve the actions of the Defendants, and thus, may cause prejudice to the Defendants if they are compelled to defend against them.  As such, this Court will exercise its considerable discretion and grant Defendants' Motions to Strike.

**B.     Motion to Dismiss**

**1.     Pennsylvania Unfair Trade Practices and Consumer Protection Law**

Defendants assert that the Charlestons have failed to state a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. § 201-1 et seq. (2008) ("UTPCPL"), in Count III because no claim exists against a physician under this scheme. Therefore, Defendants argue that Count III should be stricken with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Charlestons argue, however, that claims under the UTPCPL are restricted only when a licensed health care provider is the defendant because of the public policy concerns associated with having doctors deemed as guarantors of medical services. They assert that such immunity does not apply "to persons who are not actual physicians, such as cosmetologists, or to persons who are not licensed to practice medicine in the Commonwealth,

such as spa owners, or to those persons who aide and abet cosmetologists in their illegal 'practice of medicine' without a license and without direct supervision." (Pls.' Resp. Defs.' Mot. Dismiss at 4.) We agree with the Charlestons.

In Foflygen v. Zemel, the Superior Court of Pennsylvania stated that "it is clear that the [UTPCPL] is intended to prohibit unlawful practices relating to trade or commerce and of the type associated with business enterprises. It equally is clear that the legislature did not intend the Act to apply to physicians regarding medical services." 615 A.2d 1345, 1354 (Pa. Super. Ct. 1992) (quoting Gatten v. Merzi, 579 A.2d 974, 976 (Pa. Super. Ct. 1990)). However, in Katlin v. Tremoglie, the plaintiff alleged that the defendant, who was not licensed to practice medicine, "provided psychiatric counseling and prescribed controlled substances which Katlin filled and ingested." 43 Pa. D. & C.4th 373, at 375 (Pa. D. & C.4th 1999). The Katlin court ordered that "Plaintiff's fraud/negligent misrepresentation, Pennsylvania's Consumer Protection Law, breach of contract, breach of confidentiality and invasion of privacy claims are certified to proceed as a class action limited to economic, nominal, and punitive damages." Id. at 418.

Here, as in Katlin, the UTPCPL is not being applied to a physician licensed to practice medicine in Pennsylvania. Rather, the Act is being applied to cosmetologists and other persons who are not licensed to practice medicine in Pennsylvania. Therefore, Foflygen does not control here, and as such, this Court will deny Defendants' Motions to Dismiss the Charlestons' UTPCPL claim.

2.  **Common Law Fraud**

Defendants assert that the Charlestons have failed to state a claim for common law fraud as set forth in Count IV of the Complaint because of a lack of specificity. Defendants therefore

8

argue that Count IV should be stricken with prejudice pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud must "state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b).  By pleading with particularity, a plaintiff places defendants "on notice of the precise misconduct with which they are charged, and . . . safeguard[s] defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984). To satisfy the particularity requirement, a plaintiff must plead:

> (1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage.

In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 276 (3d Cir. 2006). The Third Circuit has held that in order to satisfy these elements, a complaint must allege "all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the 'who, what, when, where and how' of the events at issue." In re Rockefeller Ctr. Props. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (overruled on other grounds). Nevertheless, the Third Circuit has cautioned against "focusing exclusively on [Rule 9(b)'s] 'particularity' language" because such a focus is "too narrow an approach [that] fails to take account of the general simplicity and flexibility contemplated by the rules." Seville, 742 F.2d at 791 (quoting Christidis v. First Pa. Mortgage Trust, 717 F.2d 96, 100 (3d Cir. 1983)). Instead, the court must evaluate whether the complaint "adequately describes the nature and subject of the alleged misrepresentation." Id.

The several hundred paragraphs in the Charlestons' Amended Complaint provide more than enough information to satisfy Rule 9(b). The Charlestons identified the participants of the alleged fraudulent conduct: Troyan, Salon Secrets, PT Lasers, Dr. Burke and Barbara Lindner. The Charlestons also described the alleged fraudulent scheme: Troyan and Dr. Burke formed PT Lasers to lease a medical laser that only a doctor could purchase. Thereafter, Salon Secrets continued to market and act as though Dr. Burke was affiliated with the spa as its medical director, when in fact, he was not. Troyan was aware of this fact, but she nevertheless allowed her cosmetologist employee to use the laser without any medical supervision, and concealed Dr. Burke's resignation from her staff and from her clients. The Charlestons also argue that Dr. Burke either permitted the spa to use his name and affiliation to promote laser hair removal at the spa, or he nonetheless allowed the unsupervised use of his equipment at Salon Secrets by dropping off the laser at the facility even after his medical license in Pennsylvania had expired.

Further, paragraphs fourteen, eighty and eighty-one of the Amended Complaint set forth when the allegedly fraudulent conduct took place: In 2004, Troyan and Dr. Burke agreed to form PT Lasers and, in that same year, agreed to acquire the laser hair removal device. (Pls.' Am. Compl. ¶¶ 14, 80 and 81.) The Charlestons have also alleged that as of October 31, 2006, Dr. Burke had resigned from his position at Salon Secrets and allowed his Pennsylvania medical license to lapse. (Id. ¶ 23.) It has also been alleged that from November 2006 through February 10, 2007, Dr. Burke regularly traveled to Salon Secrets to either pick up or return the laser device to Salon Secrets after using the device in his own private practice. (Id. ¶ 26.) Moreover, the Charlestons have alleged that on February 10, 2007, Salon Secrets and Lindner had a duty to inform Charleston that she was not a candidate for hair removal, that skin tests needed to be

performed, and that Lindner was not lawfully entitled to perform laser hair removal because of the lack of medical supervision. (Id. ¶ 289-95.)

Finally, the content of the misrepresentations has been sufficiently pled. "It is a well-established rule that deliberate nondisclosure of a material fact amounts to culpable misrepresentation no less than an intentional false affirmation." Marian Bank v. Int'l Harvester Credit Corp., 550 F. Supp. 456, 461 (E.D. Pa. 1982). Furthermore, silence is actionable as a misrepresentation when there is a duty to speak. Wilson v. Donegal Mut. Ins. Co., 598 A.2d 1310, 1315 (Pa. Super. Ct. 1991). The Charlestons have alleged that Defendants had a duty to speak as a result of the relationship between Salon Secrets and Charleston. They argue that this relationship is akin to a physician-patient relationship where the physician's agent, Lindner, carried out a medical procedure as Dr. Burke's delegated agent.[2] (Pls.' Am. Compl. ¶ 70.) It has been alleged that Salon Secrets's owner failed to disclose to her employees that Dr. Burke had resigned months before Charleston's injury, and thereby concealed this information from Lindner which in turn caused her unknowingly to engage in the unlawful practice of medicine. (Id. ¶ 269.) Moreover, the Charlestons have alleged that Charleston was never informed of the need for a skin test, which would have taken twenty-four to forty-eight hours to complete, nor was she informed by Lindner or by anyone else from Salon Secrets that laser hair removal treatment could not be performed that day because Salon Secrets was not under the direction of a licensed

---

[2] The Charlestons argue that Troyan represented that Dr. Burke was in fact the medical director at the time of Charleston's injury. They assert that if Troyan's representation was true, then Dr. Burke or his agent had a duty to speak, even if he had delegated the procedure or permitted the delegation to take place. In the alternative, the Charlestons argue that if Dr. Burke was not Salon Secrets's medical director, he or his agent still had a duty to speak as he was the joint owner of PT Lasers. The Charlestons further allege that a duty to speak arises out of Dr. Burke's course of conduct where he supplied the laser to Salon Secrets at a time when he knew or should have known that Salon Secrets did not have a supervising physician.

physician. (Id. ¶ 289-94.) This Court finds that these alleged nondisclosures constitute misrepresentations that are actionable in Pennsylvania as a common law fraud claim. Therefore, Defendants' Motions to Dismiss the common law fraud claim will be denied.

### 3.     Punitive Damages

Finally, Defendants assert that the Charlestons have failed to plead the requisite mental state to support a request for punitive damages against Dr. Burke, and hence, their request for punitive damages should be dismissed. The Charlestons, however, argue that the reckless disregard for the safety of Charleston can be inferred from the alleged conduct – where individuals allow for the unauthorized practice of medicine and permit an unlicensed person to use a restricted medical device.

Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (quoting Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984)). A claim for punitive damages "must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Id. at 772.

The several hundred paragraphs in the Charlestons' Amended Complaint sufficiently establish a claim that the Defendants had a subjective appreciation of the risk of harm to which Charleston was exposed, and that they acted, or failed to act, in conscious disregard of that risk. Read as a whole, these allegations claim: 1) that the Defendants were aware that an unlicensed person was using a restricted medical device; 2) that the Defendants were aware that physical

harm could result from misuse of the device; and 3) that the Defendants allowed an unlicensed person to use the device despite this knowledge. A reckless state of mind can be inferred from such allegations. Therefore, this Court will deny Defendants' Motions to Dismiss the Charlestons' claim for punitive damages.

      An appropriate Order follows.