## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH CHARLESTON and | : | |
| LARRY CHARLESTON, w/h | : | |
| | : | **CIVIL ACTION** |
| vs. | : | |
| | : | |
| SALON SECRETS DAY SPA, INC. and | : | **NO. 08-5889** |
| PT LASERS, LLC and | : | |
| PAMELA A. TROYAN and | : | |
| BARBARA A. LINDNER and | : | |
| THOMAS J. BURKE, D.O. and | : | |
| JOHN DOE, Nos. 1-5 | : | |

## O R D E R

AND NOW, this          day of                    , 2011, upon consideration of

the motion for partial summary judgment of defendants, Salon Secrets Day Spa, Inc. and Pamela A.

Troyan, any responses thereto, and good cause appearing, it is hereby ORDERED AND DECREED

that summary judgment is GRANTED, as follows:

1. Pamela Troyan is dismissed with prejudice.

2. The punitive damages claims against Pamela Troyan and Salon Secrets Day Spa, Inc. are dismissed with prejudice.

3. The claims in Count III alleging Consumer Fraud (UTPCPL) against Pamela Troyan and Salon Secrets Day Spa, Inc. is dismissed with prejudice.

4. The claims in Count III, Paragraph 287, of the Amended Complaint alleging claims for treble damages against Pamela Troyan and Salon Secrets Day Space are dismissed with prejudice.

5. The claims in Count IV alleging Common Law Fraud against Pamela Troyan and Salon Secrets Day Spa, Inc. is dismissed with prejudice.

By the Court:

_____
**Robert F. Kelly, Senior Judge**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DEBORAH CHARLESTON and | : | |
| LARRY CHARLESTON, w/h | : | |
| | : | **CIVIL ACTION** |
| vs. | : | |
| | : | |
| SALON SECRETS DAY SPA, INC. and | : | **NO.  08-5889** |
| PT LASERS, LLC and | : | |
| PAMELA A. TROYAN and | : | |
| BARBARA A. LINDNER and | : | |
| THOMAS J. BURKE, D.O. and | : | |
| JOHN DOE, Nos. 1-5 | : | |

## PARTIAL MOTION OF SUMMARY JUDGMENT OF SALON SECRETS DAY SPA, INC. AND PAMELA A. TROYAN RE ALL CLAIMS VS. PAMELA TROYAN, THE PUNITIVE AND TREBLE DAMAGES CLAIMS AND COUNTS III AND IV ALLEGING CONSUMER AND COMMON LAW FRAUD

1.      This case arises out of a chin and jaw laser hair removal service of February 10, 2007 to plaintiff, Deborah Charleston [hereinafter "plaintiff"] under the medical supervision of Thomas J. Burke, D.O. , a dermatologist and medical director of Salon Secrets Day Spa, Inc. [hereinafter "Salon Secrets"]. Plaintiff claims she sustained burns which have since healed.[1]

2.      The laser hair removal was performed by defendant, Barbara Lindner, at Salon Secrets, a salon and spa, wholly owned by Pamela Troyan.[2] At all times, Ms. Lindner was a licensed esthetician and an employee of Salon Secrets.[3] She was not employed by Ms. Troyan personally.

---

[1]  Plaintiff claims she still has some hyperpigmentation of the chin and jaws.  See deposition of plaintiff, Exhibit "C", N.T. 158.

[2]  Defendant P.T. Lasers, LLC was formed by Dr. Burke and Ms. Troyan to acquire the Harmony laser device used to perform the service at issue.  There is no dispute that the laser could not be acquired by a layperson–only by a licensed doctor.

[3]  A copy of the Amended Complaint is attached hereto as Exhibit "A". On March 31, 2009 and April 20, 2009, moving defendants filed a Motions to Dismiss with regard to the original and amended complaints.  Counsel for defendant Thomas J. Burke filed a Motion to Strike and Partial Motion to Dismiss on March 31, 2009 and April 27, 2009.  On June 1, 2009, the Honorable Robert Kelly denied granted motions to dismiss filed by defendants and struck paragraphs 48, 49, 50, 51, 53, 54, 55, 61, 63, 70, 71 and 72 from the amended complaint.

3.      Pamela Troyan and Salon Secrets filed an Answer to the Amended Complaint;[4] and denied liability.

4.      The discovery deadline was October 29, 2010.  The motion deadline is January 14, 2011.  There is no trial date.

5.      On October 15, 2009 plaintiff, Deborah Charleston, was deposed.[5]

6.      Plaintiff became a client of Salon Secrets after discovering its website while researching where to have eyelash extensions done.[6]  She had eyelash extensions performed on November 10 and 27, 2006, January 13, 27 and February 10, 2007–all by Barbara Lindner.[7]

7.      On February 10, 2007 she also had microdermabrasion of her face performed by Ms. Lindner, which she had booked during her previous visit.[8]  She decided on this service because she thought it would freshen up her face.[9]

8.      Prior to the February 10, 2007 visit plaintiff did not know Salon Secrets offered laser hair removal services or that these services were performed under the supervision of Dr. Burke.[10]

9.      Plaintiff claims Ms. Lindner did not give her a consent form to sign.[11]  To the contrary, Barbara Lindner testified that she did give plaintiff a consent form to sign and discussed

---

[4]  A copy of moving defendants' Answer to the Amended Complaint is attached hereto as Exhibit "B".

[5]  A copy of Deborah Charleston's deposition is attached hereto as Exhibit "C". Plaintiff, Larry Charleston, was also deposed on October 15, 2009.  His testimony was not pertinent to the within motion.

[6]  See deposition of plaintiff, Exhibit "C", N.T. 97-99.

[7]  Id. at N.T. 103-104.  Barbara Lindner was deposed on August 5, 2010.  A copy of her deposition is attached hereto as Exhibit "D".

[8]  See deposition  of plaintiff, Exhibit "C", N.T. 104.

[9]  Id. at N.T. 104-05.

[10]  Id. at N.T. 116-117.

[11]  Id. at N.T. 122.

the possibility of hyperpigmentation as a risk.[12]

10.    At the time of the laser hair removal service at issue, Ms. Lindner believed that Dr. Burke was medical director of Salon Secrets.[13]

11.    Ms. Lindner, who was trained to operate the Harmony laser device, had suggested to plaintiff that she try laser hair removal after plaintiff mentioned "electrology" because the laser hair removal was more advanced.[14]

12.    During training, employees of Salon Secrets were taught that a skin test was required before performing a laser hair removal service.[15]

13.    Pamela Troyan was deposed on March 11, 2010 and June 9, 2010.[16]  She testified regarding salon policies and procedures relating to the Harmony laser device; and that Dr. Burke was medical director of Salon Secrets in February, 2007.[17]

14.    Ms. Troyan testified that it was salon policy that patients undergoing laser services were to have a skin test first and the esthetician was to inspect the test spot 24-48 hours later.[18]

15.    Ms. Troyan required all employees to complete a training session on the laser device

---

[12] See deposition of Barbara Lindner, Exhibit "D", N.T. 66-67, 75-76.  Ms. Lindner testified was salon policy to give patients a consent form to sign.  Id. at N.T. 66-67.

[13] Id. at N.T. 133-134.  See also deposition of Dr. Burke, Exhibit "G", N.T. 44 hereinafter in which he testified that the Harmony device would only be sold to or acquired by a physician. In other words, without Dr. Burke, Salon Secrets could not have acquired the Harmony device.

[14] See deposition  of Barbara Lindner, Exhibit "D", N.T. 154-44.

[15] Id. at N.T. 98.  Ms. Lindner conceded that she did not comply with the standard of care because she did not wait 24-48 hours after performing a skin test.  Id. at N.T. 99-100.

[16] A copy of her depositions are attached hereto as Exhibit "E" and "F", respectively.

[17] Ms. Troyan is a 100% shareholder of Salon Secrets Day Spa, Inc.  She owns 50% of PT Laser.  The other 50% is owned by Dr. Burke.  PT Laser ceased oparation in December, 2007 but it is still viable corporation; and neither she nor Dr. Burke have resigned.  See deposition of Pamela Troyan, Exhibit "E", N.T. 5-13.

[18] See Deposition of Pamela Troyan, Exhibit "E", N.T. 49-50.

3

before they could use it.[19]

16.     At the time of the alleged incident of February 10, 2007, Ms. Troyan did not know

Dr. Burke did not consider himself to be medical director.[20]  To the contrary, since the laser device

was shared equally by Dr. Burke and Salon Secrets (each had it about 2 weeks per month) as of the

time of the alleged incident, and Dr. Burke did not tender his resignation to Salon Secrets, Ms.

Troyan believed that he was, in fact, the Medical Director.

17.     That Dr. Burke was, in fact, the Salon Secrets medical director was further confirmed

to Ms. Troyan when she spoke with Dr. Burke shortly after plaintiff's incident; and  he did not say

anything about no longer being medical director or that the incident was not his responsibility.[21]

18.     Dr. Burke was deposed on February 18, 2010 and May 4, 2010.[22]

19.     Dr. Burke testified he was not directly involved in the training of Barbara Lindner but

he testified that the estheticians were trained on the Harmony machine and he was present.[23]

20.     Dr. Burke's Pennsylvania medical license lapsed on October 31, 2006 but he never

---

[19]  See deposition of Pamela Troyan, Exhibit "E", N.T. 79-80.

[20]  Id. at N.T. 109-10.  Ms. Troyan testified that she was not aware that Dr. Burke was resigning as medical director until December, 2007.  Id. at N.T. 109-12.  This is contrary to Dr. Burke's testimony that he told Ms. Troyan he was resigning in February, 2006 and it would be effective April, 2006.  See deposition  of Dr. Burke, Exhibit "G", N.T. 94.
        Additionally, Jason Carpenter, the MedX employee who trained the technicians at the spa, testified that both Pamela Troyan and Dr. Burke contacted him about the medical director position in early 2006.  He said Pamela Troyan contacted him seeking help to find a new medical director and Burke contacted Mr. Carpenter about resigning as medical director.  See deposition  of Jason Carpenter, Exhibit "J", N.T. 38-39, 41-43.
        Regarding of this factual dispute about whether Dr. Burke was the medical director, it was Ms. Troyan's *impression* that Dr. Burke was acting as a medical director of the spa until a replacement was found.

[21]  See deposition of Pamela Troyan, Exhibit "E", N.T. 42-46.

[22]  Dr. Burke's depositions are attached hereto as Exhibit "G" and "H", respectively.

[23]  See deposition of Dr. Burke, Exhibit "G", N.T. 22-24.  Mr. Carpenter testified that Dr. Burke trained employees of the clinical background.  See deposition  of Mr. Carpenter, Exhibit "J", N.T. 24.

provided Pamela Troyan with documentation of this lapse, nor did he tell any employees at the spa.[24]

21.     Dr. Burke testified that he was **responsible** for supervision of the Harmony laser device.[25]

22.     Even after Dr. Burke's so-called resignation as medical director of Salon Secrets, he continued to share the Harmony laser device with Salon Secrets.  He would pick up and drop off the laser every 2 weeks (he shared it with Salon Secrets), and he still had keys to Salon Secrets.[26]

23.     The office manager of Salon Secrets, Ana Ortiz ,was deposed on August 24, 2010.[27] She often transported the laser to Dr. Burke's office or picked it up; and testified that she had no idea that Dr. Burke was no longer medical director during that time as of the time of the service at issue.[28]

24.     Two other Salon Secrets employees, Stephanie Burns and Kim Lancashire, estheticians like Barbara Lindner, also were not aware that Dr. Burke resigned.  It was their belief that in February 2007 Dr. Burke was acting as medical director of the spa.[29]

25.     In addition, Ms. Burns was aware that the Harmony laser was shared by Dr. Burke and Salon Secrets in 2006 and 2007.  At no point did anyone at the Spa tell her that he had resigned or that Pamela Troyan was looking for a new medical director.[30]

_____

[24]  See deposition of Dr. Burke, Exhibit "G", N.T. 46-48.

[25]  See id.

[26]  See deposition of Dr. Burke, Exhibit "H" N.T. 189.

[27]  A copy of her deposition is attached hereto as Exhibit "I."

[28]  See deposition of Ana Ortiz, Exhibit "I", N.T. 13-17.  This is contrary to Dr. Burke's testimony that he told Ana he was no longer medical director.  See deposition of Dr. Burke, Exhibit "G", 89-90.

[29]  See deposition of Ana Ortiz, Exhibit "I", N.T. 38; deposition of Stephanie Burns, Exhibit "K", N.T. 39-40; and deposition of Kim Lancashire, Exhibit "L", N.T. 44.

[30]  See deposition of Stephanie Burns, Exhibit "K", 56-57.

**A.**     **The Punitive Damages Claims Should Be Dismissed**

26.     Plaintiffs allege that they are entitled to punitive damages based on the actions of defendants, Salon Secrets and Pamela Troyan.[31]  There is no evidence to support such a claim.

27.     This court has adopted the Pennsylvania Supreme Court standard for punitive damages.  Mansamann v. Tuman, 970 F. Supp. 389 (E.D. Pa. 1997)(citing SHV Coal, Inc. v. Continental Grain Co., 526 Pa. 489, 493 (1991).  Punitive damages may be awarded only for conduct that is especially *egregious or outrageous*.  Martin v. Johns-Manville Corp., 508 Pa. 154, 494 A.2d 1088, 1096-97 (Pa. 1985), Medvecz v. Choi, 569 F.2d 1221 (3d Cir. 1977) (citing Restatement of Torts, Section 908 (1939)).  Punitive damages may not be awarded for misconduct, "which constitutes **ordinary negligence such as inadvertence, mistake and errors of judgment**." Martin, 494 A.2d at 1097 (emphasis added).

28.     Pennsylvania has adopted section 908 of the Restatement (Second) of Torts and accompanying comments regarding the imposition of punitive damages. Section 908(2) provides, in pertinent part:

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.

Restatement of Torts (Second) § 908(2).  Comment b to this section of the Restatement states: "Punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with reckless indifference to the interests of others." Id.

29.     The Pennsylvania Supreme Court has reiterated the exacting standards for a plaintiff to prevail on a punitive damages claim. "[The] assessment of punitive damages are proper when a person's actions are of such an outrageous nature as to demonstrate **intentional, willful, wanton,**

---

[31] See Exhibit "A" ¶¶ 289-295.

**or reckless conduct**, and are awarded to punish that person for such conduct."(emphasis added) Mansamann v. Tuman, 970 F. Supp. 389 (E.D. Pa. 1997)(citing SHV Coal, Inc. v. Continental Grain Co., 526 Pa. 489, 587 A.2d 702, 704 (Pa.1991); see also Neal v. Carey Canadian Mines, Ltd., 548 F.Supp. 357, 377 (E.D. Pa.1982).

30.     If there is any negligence at issue in this case (which is denied for purposes of this motion) is it simply that–ordinary negligence on the part of on Barbara Lindner, an employee of Salon Secrets, in connection with performance of the laser hair removal service without the requisite skin test at issue.[32]  There is no evidence of any conduct of Salon Secrets or Ms. Lindner which was with evil motive or reckless indifference.

31.     At the time of the incident, it was Ms. Troyan's belief that Dr. Burke was the acting medical director.[33]  There is no evidence that she intentionally or recklessly operated without a medical director.[34]  Ms. Troyan was not aware Dr. Burke's medical malpractice coverage lapsed until December 2007.[35]

32.     Of perhaps greater importance, if Dr. Burke admitted to being the medical director at the time of the laser service at issue in this lawsuit, which he denies, there is no evidence from the plaintiffs or Dr. Burke that Ms. Lindner's conduct would have been any different or that the alleged burns to plaintiff would not have occurred.  Otherwise stated, there is no evidence that Ms. Lindner

---

[32]  Ms. Lindner admitted she did not do a skin test and did not wait the 24-48 hour period, however, she was not do so with an intent to harm or with evil or reckless motive toward plaintiff.  Indeed, she had used the machine prior to the date at issue on four(4) other African American clients, including herself, in addition to plaintiff.  See deposition of Barbara Lindner, Exhibit "D", N.T. 37.

[33]  See deposition of Pamela Troyan, Exhibit "F", N.T. 345-347.

[34]  Although Dr. Burke and Mr. Carpenter both testified that Ms. Troyan inquired about finding a new medical director, this does not alter her belief that Dr. Burke was medical director at the time of the incident. Furthermore, Ms. Troyan did not have any knowledge an on site medical director was needed to operate the Harmony device, she thought it was acceptable for the doctor to be offsite.  See deposition of Pamela Troyan, Exhibit "E", N.T. 200-03.

[35]  See deposition of Dr. Burke, Exhibit "G", N.T. 44-46.

would have consulted with Dr. Burke before performing the service or that he would have been at the salon in person supervising the service. The outcome of the service would not have been different for the plaintiff if Dr. Burke was medical director.

33.    Therefore, the apparent dispute between Salon Secrets and Dr. Burke in this lawsuit over whether he was the medical director can not form the basis for the type of conduct necessary for punitive damages to be appropriate. The belief on the part of Salon Secrets, Ms. Troyan and Ms. Lindner that Dr. Burke was the medical director at the time, even if an mistaken belief, was not **intentional, willful, wanton, or reckless conduct** necessary for an award of punitive damages.

**B.    Plaintiffs Can Not Pierce the Corporate Veil of Salon Secrets Day Spa, Inc. So Pamela Troyan Sued Individually Should Be Dismissed**

34.    Plaintiffs allege that Pamela Troyan, as an individual, is liable for negligence (Count I), informed consent (Count II), Consumer Fraud (Count III), Common Law Fraud (count IV), negligent misrepresentation (Count V), negligence per se (Count VI), loss of consortium (Count VII) and negligent infliction of emotional distress (Count VIII).[36]

35.    Ms. Troyan, the owner of Salon Secrets Day Spa, Inc., is not personally liable to plaintiffs because plaintiffs fail to present the requisite evidence to pierce the corporate veil and hold her personally liable for plaintiffs' claims.

36.    Whether the corporate veil which protects the shareholders or owners of a corporations for the actions of the corporations may be pierced is a matter of state law. See Star Creations Investment Co., Ltd. v. Alan Amron Development, Inc., 1995 U.S. Dist. LEXIS 11967, *34 (E.D.Pa.1995). In Pennsylvania, courts employ a "totality of the circumstances test." Plastipak Packaging, Inc. v. DePasquale, 75 Fed. Appx. 86, 88 (3d Cir.2003) (citing First Realvest, Inc. v. Avery Builders, Inc., 410 Pa.Super. 572, 600 A.2d 601, 604 (Pa. Super. 1991)).

---

[36]    See Exhibit "A".

37.     Applying this "totally of the circumstances test", Pennsylvania courts have generally been willing to pierce the corporate veil only "whenever necessary to prevent injustice." Id. (citing Rinck v. Rinck, 363 Pa. Super. 593, 526 A.2d 1221, 1223 (Pa. Super. 1987)).  There is no basis in this case to pierce the veil.  The corporate entity that employed Ms. Lindner, Salon Secrets, was named as a defendant; and Ms. Troyan was not personally involved in performing the laser service.

38.     Piercing the corporate veil is the exception and the corporate entity of Salon Secrets should be upheld and shield Ms. Troyan from personal liability because there are no specific or unusual circumstances.

39.     The factors which are considered when determining whether the corporate veil should be pierced in Pennsylvania are: (1) undercapitalization; (2) failure to adhere to corporate formalities; (3) substantial intermingling of corporate and personal affairs; and (4) use of the corporate form to perpetuate a fraud.  See Klein v. Weidner, 2010 WL 571800 (E.D.Pa. 2010) (quoting Lumux Indust., Inc. Aultman, 543 Pa. 38 (1995)).

40.     Plaintiffs here have not plead any of the above four (4) factors to piercing the corporate veil theory, and equally important, they do not have evidence to support any of them.

41.     Solely because Pamela Troyan is the sole owner of Salon Secrets does not make her personally liable.  Being president or CEO does not make an individual personally liable.  See CGB Occupational Therapy Inc. v. Bala Nursing and Retirement Center, LTD, 2005 WL 280838 (Phila Cty 2005).[37]

---

[37] In Occupational Therapy, Inc. v. Bala Nursing and Retirement Center, supra, the court ruled that there was insufficient evidence to pierce the corporate veil. The court did not hold defendant Peter Miller, the President and CEO personally liable for claims against Bala Nursing and Retirement Center, MDC Asset Management Corp and the Center for Rehabilitative Therapies based solely upon an affidavit that stated he was either the President or CEO of those business entities.  Plaintiff argued the corporate veil must be pierced to hold Miller personally liable for the alleged acts of CRT, MDC, and Bala including claims for breach of contract, fraud and conversion, among others, because Miller was the CEO or President of the entities and Plaintiff had an Affidavit to that effect and used the affidavit to argue that Miller's status alone could establish these businesses were merely an instrumentality of Miller.  **The court concluded that this alone did not provide sufficient evidence to support Miller's personal**

42.     Plaintiffs may argue that the "participation theory" imposes personal liability on Ms.

Troyan.  That argument must be rejected.  Under this theory, corporate officers or shareholders are

liable where they have personally taken part in the tortious actions of the corporation.  See Wicks

v. Milzoco Builders, Inc., 503 Pa. 614, 621 (1983).[38]  Here, Ms. Lindner committed the alleged

tort–the alleged negligence use of the laser hair removal device–not Ms. Troyan personally; and Ms.

Lindner was an employee of Salon Secrets–not Ms. Troyan.

43.     The Supreme Court of Pennsylvania has adopted the following definition of

"participation theory":

> The general, if not universal, rule is that an officer of a corporation who takes part in the
> commission of a tort by the corporation is personally liable therefor; but that an officer of a
> corporation who takes no part in the commission of the tort committed by the corporation
> is not personally liable to third persons for such tort, nor for the acts of other agents, officers
> or employees of the corporation in committing it, unless he specifically directed the
> particular act to be done or participated, or cooperated therein.

Wicks, 503 Pa. at 621-22, 470 A.2d 86 (citing 3A Fletcher, Cyclopedia of the Law of Private

Corporations § 1137, p. 207 (perm. ed. rev.1975)).   There is no evidence that Ms. Troyan either

participated in or directed the alleged tort.[39]

44.     A corporate officer may be held individually liable only if he or she has taken some

sort of affirmative act in furtherance of the alleged tort.  Indeed, this court noted that corporate

---

**liability and granted the motion for summary judgment on this claim.**  2005 WL 280838.

[38]   In Wicks, the plaintiffs were homeowners in a subdivision and they brought a cause of action alleging
the corporation and its individual shareholders were liable in tort.  The Complaint stated the individual shareholders
were aware, or should have been aware, of the problems, and therefore, were negligent in failing to take appropriate
measures.  In Wicks the court held the allegations were sufficient to establish a cause of action in tort against the
individual shareholders under the participation theory because the **shareholders were personal participants in the
tortious acts allegedly committed by the corporation.**  See id. at 617-18.

[39]In Loeffler v. McShane, 372 Pa. Super. 442 (1988), the Pa. Superior Court held a corporate officer liable
in his individual capacity because the officer *specifically directed the particular act at issue be done* (active
involvement in misallocation of funds).  See Loeffler, 372 Pa. Super. at 447.

officers may only be held liable for misfeasance, and not "mere nonfeasance." Id. at 622, 470 A.2d

86. See McGovern v. Jack D's, Inc. 2004 WL 228667 (E.D.Pa. 2004).   Consequently, Ms. Troyan

can not be held personally liable since she did not participate in the performance of the laser hair

removal.

45.     The Pennsylvania Supreme Court stated in Wicks, supra, that claiming the corporate

officer *should have known the consequences* of the liability creating corporate act alone is

insufficient to prove liability.  See id. at 623.

46.     Additionally, when her employees performed a salon service, it was Ms. Troyan's

understanding that the Salon Secrets employees were following the procedures of the salon on which

they were trained.[40]

47.     Furthermore, there is no evidence that plaintiff relied upon any representation made

of Ms. Troyan personally in deciding to have the laser service.[41] Ms. Charleston came into the salon

for eyelash extension and a microdermabrasion and elected to have the laser hair removal during

consultation session with Ms. Lindner, an employee of Salon Secrets.[42]

48.     Ms. Charleston did not recall reading any representation at Salon Secrets, such as an

article or a business card, or on the website, which enticed her to have the laser hair removal.[43]

## C.    Count III Alleging Consumer Fraud (UTPCPL) Should Be Dismissed

49.     In Count III plaintiffs allege Pamela Troyan and Salon Secrets engaged in or allowed

others to engage in the unauthorized practice of medicine, violating the Pennsylvania Unfair Trade

---

[40] See deposition of Pamela Troyan, Exhibit "E", N.T. 175.

[41] See deposition of Deborah Charleston, Exhibit "C", N.T. 68, 70, 97, 104.  Plaintiff had prior to becoming a client of Salon Secrets consulted with Dr. Vause, a dermatologist, regarding laser hair removal on April 27, May 16, 2006. Id. at N.T. 68.

[42] See deposition of Barbara Lindner, Exhibit "D", N.T. 116-17.

[43] See deposition of plaintiff, Exhibit "C", N.T. 110.

Practices and Consumer Protection Law [UTPCPL].[44] Specifically, "[i]n the event Pamela Troyan did not disclose to Barbara Lindner that Dr. Burke terminated his agreement with the Spa, then Pamela Troyan is liable for concealing from her employees this information which caused Ms. Lindner to unknowingly engage in the unlawful practice of medicine."[45]

50.     Additionally, plaintiffs allege "Defendant aided and/or abetted this unlawful practice by delivering a prescription medical device to a Spa and its employees, who were all unauthorized to use the device in the absence of supervision." See id. at ¶¶283-85.

51.     Plaintiffs have no evidence Salon Secrets or Pamela Troyan committed consumer fraud under the UTPCPL. First of all, plaintiff's services were provided by Salon Secrets–not by Ms. Troyan. Private actions are defined under the Act as:

> (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S §201-9.2(a).

52.     To prove liability under the UTPCPL, the plaintiff needs to present sufficient evidence that she justifiably relied upon the alleged misrepresentations made by defendants. Specifically,  as Pennsylvania Supreme court held in Weinberg v. Sun Co., 740 A.2d 1152 (Pa. Super. 1999), that "[t]o bring a private cause of action under the [Consumer Protection Law], a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." **A justifiable reliance requires the plaintiff**

---

[44] See Exhibit "A", ¶265.

[45] See id. at ¶269. Further, that the "unfair or deceptive acts or practices resulted from both the nondisclosure of information along with the conduct of Ms. Lindner who acted as though she was approved to perform laser hair removal as a precursor to the scheduled microdermabrasion procedure." Id. at ¶278. Furthermore that plaintiff is entitled to damages under the Consumer Fraud Act and defendants are liable under the same.

**to show she justifiably bought the product or service because of the misrepresentations; a causal connection is not enough.** See <u>Weinberg</u>, 777 A.2d at 445. This standard applies to all sections of the Consumer Protection Law. See <u>Hunt v. United States Tobacco Company</u>, 538 F.3d 217, 224 (3rd Cir. 2008).[46]

53.     In other words, plaintiff must demonstrate that common law elements of justifiable reliance in order to sustain a private cause of action under the UTPCPL. <u>Toy v. Metropolitan Life Insurance Co.</u>, 863 A.2d 1 (Pa. Super. 2004).

54.     There is insufficient evidence that Mrs. Charleston justifiably relied upon any representation made by Pamela Troyan or Salon Secrets regarding the laser procedure and/or presence of a medical director.  Specifically, plaintiff knew about laser hair prior to receiving it at Salon Secrets – she discussed having a laser hair removal with Dr. Vause on May 16, 2006.[47]

55.     Accordingly, plaintiff knew about and was interested in receiving laser hair removal before discussing it with Ms. Lindner.

56.     There is no evidence that Pamela Troyan personally made any representations to plaintiffs about the laser hair removal.

57.     Equally important, plaintiff was not enticed to go to Salon Secrets for the laser hair removal by any representation on the Salon's website regarding the service.  She did not see any business cards of a physician on the reception desk.[48]

58.     In the alternative, as is set forth hereinafter in defendants' memorandum of law, no

---

[46]  In <u>Hunt</u>, Judge Ambro of the Third Circuit stated that the Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision causation requirement that there must be a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm.  <u>Hunt</u>, 538 F.3d at 222.

[47]  See deposition of plaintiff, Exhibit "C",  N.T. 67, 68-69.

[48]  <u>Id.</u> at N.T. 110.

claim exists against a salon and a salon owner under the UTPCPL based on the allegations that an improper and/or unsupervised medical procedure was performed, or for fraud.

**D.**   **Paragraph 287 of the Amended Complaint Claiming Threefold or Treble Damages Should Be Dismissed**

59.   Plaintiffs allege that they are entitled to treble damages because defendants breached the Consumer Fraud Act.[49]

60.   The UTPCPL statute only allows treble damages to be awarded when the act is violated, however, such an award is discretionary.   There is no basis for them in this case.

61.   In exercising their discretion to award treble damages under the Unfair Trade Practices and Consumer Protection Law, courts of original jurisdiction should focus on the presence of intentional or reckless conduct.   Schwartz v. Rockey, 932 A.2d 885, 593 Pa. 536 (2007).   Such conduct is clearly lacking in this case.

62.   Ms. Troyan did not intentionally practice medicine, as plaintiffs' allege, because she did not know Dr. Burke was officially no longer functioning as medical director of the Salon Secrets.[50]   At best for plaintiffs, Salon Secrets operated under the mistaken impression that Dr. Burke was still the medical director; and there is no evidence that if the was the medical director that the outcome in this case would have been any different.   Therefore, the absence of a medical director is no a basis for treble damages.

63.   Equally important, the alleged conduct at issue of Ms. Lindner, an employee of Salon Secrets, is not indicative of anything other than the negligent use of the laser device.   The record is

---

[49]   See Exhibit "A", ¶287.

[50]   Ms. Troyan testified that she did not recall Dr. Burke informing her that he was resigning as medical director until December 2007.   See deposition of Pamela Troyan, Exhibit "E", N.T. 200-03, Exhibit "F", N.T. 346-347.   She may have known he intended to resign, but not that he was no longer in that role.   Particularly because he continued to come to the spa to pick up and drop off the machine; and he shared the device equally with Salon Secrets.

devoid of evidence that would demonstrate Ms. Troyan, Ms. Lindner or any other Salon Secrets employee acted with intentional or reckless conduct toward the plaintiff.[51]

**E.     Count IV Alleging Common Law Fraud Should Be Dismissed**

64.     Plaintiffs' also allege that Ms. Troyan and Salon Secrets failed to disclose the risks of the procedure, the need for a skin test and the need for a medical director. Further, that the defendants' affirmative representations and/or silence was fraudulent and intentional. Also, that the disclosure of this information to the plaintiff would have been material to the decision of the plaintiff and the plaintiff would not have agreed to the hair removal procedure.[52]

65.     The elements of common law fraud are: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury was proximately caused by the reliance. Zaborowski v. Hospitality Care Center of Hermitage Inc., 2002 WL 32129508 (Mercer Cty 2002) (citing Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 889 (1994)).

66.     A misrepresentation, however, must be distinguished from puffery. Id., see Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 103, 337 A.2d 893, 903 (1975). Puffery is "an exaggeration or overstatement expressed in broad, vague and commendatory language." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993).

67.     Such speech is "offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer, and on which no reasonable [person] would rely." Id., W. Page Keeton, Prosser and Keeton on the Law of Torts §109 at 757 (5th ed. 1984). "It is

---

[51] See deposition of Pamela Troyan, Exhibit "E", N.T. 200-203.

[52] See Exhibit "A" ¶¶ 289-295.

common knowledge and may always be assumed that any seller will express a favorable opinion concerning what he has to sell; and when he praises it in general terms, without specific content or reference to facts, buyers" understand that they cannot literally rely upon such representations. Restatement (Second) of Torts §542 cmt. e (1978)

68.     For example, in Huddleston v. Infertility Center of America Inc., 700 A.2d 453 (Pa. Super. 1997) the fertility center claimed it was the "premier surrogacy program in the country." The court held such a statement constituted puffery with no legal consequence. Id.  Accordingly, in Zaborowski, supra, the plaintiff claimed to have relied on the representation of the defendant skilled care nursing home in the letter which stated: "[a]s always, our priority is to provide quality care and to provide a safe and comfortable environment to our residents." This statement was deemed elusive and did not constitute a representation.  Rather, it was puffery.  Zaborowski, 2002 WL 32129508.

69.     Likewise, here there is no evidence that plaintiff justifiably relied upon any representation made by Ms. Troyan or of Ms. Lindner of Salon Secrets regarding the laser service and/or the presence of a medical director.

70.     Plaintiff knew about laser hair removal before undergoing any services at Salon Secrets; she was not relying on any supposed misrepresentation made by Pamela Troyan or Ms. Lindner of Salon Secrets that compelled her to have the service.[53]

71.     Plaintiff was not enticed to the salon because she saw any representation regarding the medical director.  In fact, she testified she had no knowledge of Dr. Burke.[54]

72.     Regarding plaintiffs' claim that there was a misrepresentation about a skin test, Ms. Troyan herself did not make any representations that a skin test was not necessary.  To the contrary,

---

[53] See deposition of plaintiff, Exhibit "C", N.T. 68-70.

[54] Id. at N.T. 114-15.

it was Salon Secrets policy to perform a skin test before all laser services. [55]

73.     Ms. Troyan and Ms. Lindner lacked any intent to mislead plaintiff about the laser service or Dr. Burke's status as medical director.

74.     Last, there is simply no evidence that the alleged injury was proximately caused by any representation and/or justifiable reliance thereon.

WHEREFORE, defendants, Salon Secrets Day Spa, Inc. and Pamela Troyan, respectfully request that this partial summary judgment be granted in their favor and against the plaintiffs with prejudice.

BENNETT, BRICKLIN & SALTZBURG LLC
Respectfully submitted,


BY: _Victoria M. Komarnicki_____
     VICTORIA M. KOMARNICKI
     MEGHAN F. HENRY
     1601 Market Street, 16th Floor
     Philadelphia, PA 19103
     (215) 561-4300

---

[55] See deposition of Pamela Troyan, Exhibit "E", N.T. 49-50.  Ms. Lindner testified that she was aware that a skin test was necessary.  See Exhibit "D", N.T. 98-99.

17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEBORAH CHARLESTON and** | : | |
| **LARRY CHARLESTON, w/h** | : | |
| | : | **CIVIL ACTION** |
| **vs.** | : | |
| | : | |
| **SALON SECRETS DAY SPA, INC. and** | : | **NO.  08-5889** |
| **PT LASERS, LLC and** | : | |
| **PAMELA A. TROYAN and** | : | |
| **BARBARA A. LINDNER and** | : | |
| **THOMAS J. BURKE, D.O. and** | : | |
| **JOHN DOE, Nos. 1-5** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION OF SUMMARY
JUDGMENT OF DEFENDANTS, SALON SECRETS DAY SPA, INC. AND PAMELA A.
TROYAN RE ALL CLAIMS VS.  PAMELA TROYAN, THE PUNITIVE AND TREBLE
DAMAGES CLAIMS AND COUNTS III AND IV ALLEGING CONSUMER AND
COMMON LAW FRAUD**

## I.   INTRODUCTION

This case arises out of a chin and jaw laser hair removal service of February 10, 2007.

Plaintiff Deborah Charleston claims she sustained burns.  Defendants maintain they have healed.

The pertinent issues are whether an employee of Salon Secrets Day Spa, Inc. [hereinafter "Salon

Secrets"], Barbara Lindner, an esthetician, was negligent in the performance of the service; and if

so, whether Thomas V. Burke, D.O. was vicariously responsible as the supervising medical director

of Salon Secrets, which he denies, claiming he resigned effective April, 2006.

### A.     The Punitive Damages Claims Should Be Dismissed

Since there is no evidence of intentional, outrageous or reckless misconduct on the part of

Salon Secrets, Ms. Lindner, its employee, or Ms. Troyan, individually, the punitive damages claims

should be dismissed.

### B.     Plaintiffs Can Not Pierce the Corporate Veil of Salon Secrets So Pamela Troyan
Sued Individually Should be Dismissed

As sole shareholder of Salon Secrets, a corporation, Ms. Troyan can not be held personally

liable because she was not an active participant in the alleged tortious conduct–performing the laser service. She also did not misrepresent anything about the laser service or about the salon's medical director, Dr. Burke. Consequently, since plaintiffs, have not pled or discovered facts sufficient to pierce the corporate veil, Ms. Troyan should be dismissed. Salon Secrets would remain a defendant, as the employer of the alleged tortfeasor, Barbara Lindner.

      **C.**     **Count III Alleging Consumer Fraud (UTPCPL) Should Be Dismissed**

Plaintiff was neither enticed to have the laser service nor did she rely on a representation on the website of Salon Secrets or by Ms. Troyan or Ms. Lindner about the laser service or Dr. Burke being medical director in connection with her decision to have the service.

In the alternative, no claim exists against a salon and salon owner for a violation of the UTPCPL under the allegations of this case that an improper and/or unsupervised medical procedure was performed, or for fraud as set forth in Count IV.

      **D.**     **Paragraph 287 of the Amended Complaint Claiming Threefold or Treble Damages Should be Dismissed**

Since there is insufficient evidence of intentional, outrageous or reckless misconduct or conduct to support a claim for punitive damages, threefold or treble damages under the UTPCPL should be dismissed.

      **E.**     **Court IV Alleging Common Law Fraud Should Be Dismissed**

No misrepresentations material to the transaction (plaintiff's decision to purchase laser hair removal services) was made that plaintiff relied upon. In fact, all plaintiff knew before she had the service was that Ms. Lindner recommended it–there was no discussion about Dr. Burke or Ms. Lindner's qualifications or the risks of the service per the plaintiff. Therefore, this common law fraud count should be dismissed.

## II.   **FACTS**

The facts in the foregoing motion are incorporated herein as fully as if set forth herein.

## III.   **ARGUMENT**

### A.   **Standard for Summary Judgment**

Summary Judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment under Rule 56, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law."  Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (citing Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).  "The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).  On a motion for summary judgment, the facts should be reviewed in the light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact in order to avoid summary judgment. See Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). The nonmoving party cannot rest upon the allegations in their pleadings in response to a motion for summary judgment. Instead, a party opposing summary judgment must "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." In re TMI, 89 F.3d 1106, 1116

(3d Cir. 1996) (citing <u>Celotex Corp.</u>, 477 U.S. at 324 (1986)).  The plaintiffs here do not have sufficient evidence that an issue of material fact exits.

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the nonmoving party.'" <u>Compton v. Nat'l League of Professional Baseball Clubs</u>, 995 F. Supp. 554, 561 n.14 (E.D. Pa 1998).

Based upon the authorities discussed below and the relevant undisputed facts, the within motion should be granted.

**B.     The Punitive Damages Claims Should Be Dismissed**

There is no evidence that the actions of Salon Secrets or Pamela Troyan were intentional, willful, wanton or reckless. Thus, plaintiffs shall not be entitled to punitive damages. This court has adopted the Pennsylvania Supreme Court standard for punitive damages. See <u>Mansamann v. Tuman</u>, 970 F. Supp. 389 (E.D. Pa. 1997)(citing <u>SHV Coal, Inc. v. Continental Grain Co.</u>, 526 Pa. 489, 493 (1991). Under Pennsylvania law, punitive damages may be awarded only for conduct that is especially ***egregious or outrageous***. <u>Martin v. Johns-Manville Corp.</u>, 508 Pa. 154, 494 A.2d 1088, 1096-97 (Pa.1985), <u>Medvecz v. Choi</u>, 569 F.2d 1221 (3d Cir. 1977) (citing Restatement of Torts, Section 908 (1939)). Pennsylvania has adopted § 908 of the Restatement (Second) of Torts and accompanying comments regarding the imposition of punitive damages. Section 908(2) provides:

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.

Restatement of Torts (Second) § 908(2).  Comment b to this section of the Restatement states:

4

"Punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with reckless indifference to the interests of others." Id.

The Pennsylvania Supreme Court has reiterated the exacting standards for a plaintiff to prevail on a punitive damages claim. "[The] assessment of punitive damages are proper when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct, and are awarded to punish that person for such conduct." Mansamann v. Tuman, 970 F. Supp. 389 (E.D. Pa. 1997)(citing SHV Coal, Inc. v. Continental Grain Co., 526 Pa. 489, 587 A.2d 702, 704 (Pa.1991); see also Neal v. Carey Canadian Mines, Ltd., 548 F.Supp. 357, 377 (E.D. Pa. 1982). Importantly, punitive damages may not be awarded for misconduct, "which constitutes **ordinary negligence such as inadvertence, mistake and errors of judgment**." Martin, 494 A.2d at 1097 (emphasis added).

Punitive damages should not be awarded to plaintiffs because Ms. Troyan and the Salon Secrets did not demonstrate intentional misconduct, or any evil motive or reckless indifference. Plaintiffs allege that Ms. Troyan operated the spa with medical services without a medical director. It was Ms. Troyan's belief that at the time of the incident, February 2007, Dr. Burke was still acting as the medical director.[56]  The fact that he continued to share the device with Salon Secrets and he still had a key to the salon and visited Salon Secrets to pick up the laser device through 2007 suggests that he was still the medical director.[57]

Furthermore, there is no evidence that there were any practices of Salon Secrets which could be classified as having an evil motive or reckless indifference to Mrs. Charleston. The salon had procedures and practices in place such as consent forms and information on treatments, which were

---

[56] See deposition of Pamela Troyan, Exhibit "F", N.T. 345-347.

[57] See deposition of Dr. Burke, Exhibit "H", N.T. 189.

5

to be provided to clients.[58]  In addition, employees were trained extensively on how to use the equipment.[59]  Even if Ms. Lindner were to be found to have acted in an negligent manner as an employee of the salon, she did by no way act in an intentional, willful, wanton or reckless manner.

Accordingly, the court should grant summary judgment in favor of Pamela Troyan and Salon Secrets and dismiss with prejudice the claims for punitive damages.

### C.  Plaintiffs Can Not Pierce the Corporate Veil of Salon Secrets so Pamela Troyan Sued Individually Should Be Dismissed

Plaintiffs allege that Pamela Troyan is liable as an individual even though she was not the employer of Barbara Lindner, who committed the alleged tortious acts with regard to the laser hair removal service.[60]  That position contradicts one of the purposes of a corporation--to protect the shareholders from personal liability.  In order for a shareholder to be liable, the corporate veil must be pierced.  Here, there is insufficient evidence to pierce the corporate veil.  Plaintiffs do not even plead that theory in the amended complaint.

The issue of whether a corporate veil may be pierced is a matter of state law. See Star Creations Investment Co., Ltd. v. Alan Amron Development, Inc., 1995 U.S. Dist. LEXIS 11967, *34 (E.D.Pa.1995).  Plastipak Packaging, Inc. v. DePasquale, 75 Fed. Appx. 86, 88 (3d Cir.2003) (citing First Realvest, Inc. v. Avery Builders, Inc., 410 Pa. Super. 572, 600 A.2d 601, 604 (1991).  The courts employ a "totality of the circumstances test." Plastipak, 75 Fed. Appx. at 88. Using this test, Pennsylvania courts have generally been willing to pierce the corporate veil only when necessary to prevent injustice. Id. (citing Rinck v. Rinck, 363 Pa. Super. 593, 526 A.2d 1221, 1223

---

[58]  See deposition of Pamela Troyan, Exhibit "E", N.T. 175, see also deposition of Barbara Lindner, Exhibit "D", N.T. 66.

[59]  See deposition of Barbara Lindner, Exhibit "D", N.T. 19-20.  See also deposition of Dr. Burke, Exhibit "G", N.T. 19, 21-24.  See also deposition of Mark Carpenter, Exhibit "J", N.T. 21-24.

[60]  See Exhibit "A".

(1987).

However, there is a strong presumption against piercing the corporate veil. Piercing the corporate veil is the exception to the rule; and the corporate entity should be upheld unless there are specific and unusual circumstances. The factors which are considered when determining whether the corporate veil should be pierced are: (1) undercapitalization; (2) failure to adhere to corporate formalities; (3) substantial intermingling of corporate and personal affairs; and (4) use of the corporate form to perpetuate a fraud. See Klein v. Weidner, 2010 WL 571800 (E.D.Pa. 2010) (quoting Lumux Indust., Inc. Aultman, 543 Pa. 38 (1995)).

The plaintiffs herein do not plead any factors relating to piercing the corporate veil theory, and equally important, they do not have evidence to support any of them. Soley because Ms. Troyan is the sole shareholder does not make her personally liable. In CGB Occupational Therapy Inc. v. Bala Nursing and Retirement Center, LTD, 2005 WL 280838 (Phila Cty 2005)[61] when ruling on a motion for summary judgment, **the court concluded that solely because the defendant was the sole shareholder did not provide sufficient evidence to support his personal liability and granted the motion for summary judgment on this claim.** Id. The rationale of CGB Occupational Therapy Inc. compels the granting of the within motion. Specifically, merely because Ms. Troyan is the sole shareholder is not sufficient to establish that she is personally liable to plaintiff.

The following Pennsylvania Superior Court case concerning an individual shareholder is also

---

[61] Defendant's motion for summary judgment was granted in part and denied in part. The court ruled that there was insufficient evidence to pierce the corporate veil doctrine. The court did not hold defendant Philip Miller personally liable for claims against Bala Nursing and Retirement Center, MDC Asset Management Corp and the Center for Rehabilitative Therapies based solely upon an affidavit that stated Miller was either the President or CEO of those business entities. Plaintiff argued the corporate veil must be pierced to hold Miller personally liable for the alleged acts of CRT, MDC, and Bala including claims for breach of contract, fraud and conversion, among others, because Miller was the CEO or President of the entities and Plaintiff had an Affidavit to that effect and used the affidavit to argue that Miller's status alone could establish these businesses were merely an instrumentality of Miller. CGB Occupational Therapy Inc., 2005 WL 280838.

7

particularly pertinent and compels the granting of the within motion since plaintiff herein have failed

to plead the factors pertinent to piercing the corporate veil. <u>Village at Camelback Property Owners</u>

<u>Assn. Inc. v. Carr</u>, 371 Pa. Super. 452 (1988),[62] where an incorporated association of owners at a

townhouse development brought action against corporate officer, officer's sole proprietorship,

corporations, and limited partnerships to recover for breach of express and implied warranties,

negligence, misrepresentation, conversion, breach of duty of good faith and fair dealing, and breach

of duty as individual director of association and violations of the federal racketeering statutes. <u>Id.</u>

at 455-56.

     The Court concluded the appellant was seeking to impose personal liability on Carr, an

individual shareholder, for all of the alleged acts of the corporate defendants by piercing the

corporate veil.  The court then looked towards what the plaintiff pleaded as it pertained to Carr as

an individual and noted that plaintiff pleaded certain facts against Carr as an individual. <u>Id.</u> at 463.

Specifically, plaintiff alleged Carr had undertaken personal obligations in connection with the

Village, committed torts in his capacity as an officer of the various corporate defendants. <u>Id.</u>

Otherwise stated, he personally participated in the tortious act of the company.  Thus, a piercing of

the corporate veil theory of the various corporate defendants in order to assess liability against Carr

was *supported*.[63]  There, the plaintiff pleaded the precise factors that compel courts to pierce the

corporate veil.[64]  Plaintiffs in this case did not.

     Additionally, Pamela Troyan cannot be held personally liable under a "participation theory"

---

[62] The trial court (in Monroe County) granted preliminary objections in defendants favor.  On appeal, the Superior Court reversed and remanded.

[63] However, the court later noted that it recognized that it could later be apparent after more discovery takes place that Carr assumed no enforceable personal undertakings and is entered to judgment on the pleadings.  But at that point, the standards for sustaining a demurrer were not present. <u>Id.</u> at 464.

[64] See Exhibit "A".

of piercing the corporate veil since she did not personally participate in the alleged tortious acts.

<u>Village at Camelback Property Owners Assn. Inc.</u>, supra. The participation theory imposes personal

liability on corporate officers or shareholders where they have personally taken part in the actions

of the corporation. See also <u>Wicks v. Milzoco Builders, Inc.</u>, 503 Pa. 614, 621 (1983).[65]

The Supreme Court of Pennsylvania has endorsed the following definition of "participation"

theory":

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.

<u>Wicks</u>, 503 Pa. at 621-22, 470 A.2d 86 (citing 3A Fletcher, Cyclopedia of the Law of Private

Corporations § 1137, p. 207 (perm. ed. rev. 1975)). A corporate officer may only be held individually

liable if he or she has taken some sort of affirmative act in furtherance of the alleged tort. Indeed,

the court noted that corporate officers may only be held liable for misfeasance, and not "mere

nonfeasance." <u>Id.</u> at 622, 470 A.2d 86. See <u>McGovern v. Jack D's, Inc.</u> 2004 WL 228667 (E.D.Pa.

2004). Also notable, the Pennsylvania Supreme Court stated in <u>Wicks</u>, supra, that only claiming

the corporate officer *should have known the consequences* of the liability creating corporate act alone

is insufficient to prove liability. See <u>id.</u> at 623.

Similarly in <u>Loeffler v. McShane</u>, 372 Pa. Super. 442 (1988), the Superior Court held a

corporate officer liable in his individual capacity because the officer *specifically directed the*

---

[65] In <u>Wicks</u>, the plaintiffs were homeowners in a subdivision and they brought a cause of action alleging the corporation and its individual shareholders were liable in tort. The complaint stated the individual shareholders were aware, or should have been aware, of the problems and therefore were negligent in failing to take appropriate measures. In <u>Wicks</u> the court held the allegations were sufficient to establish a cause of action in tort against the individual shareholders under the participation theory because the **shareholders were personal participants in the tortious acts allegedly committed by the corporation.** See <u>id.</u> at 617-18.

***particular act be done***.  This direction resulted in the loss of the a mortgagors' settlement funds. It was this ***active involvement*** in the misallocation of funds that was both misfeasance and negligence, which was sufficient to support a finding of personal liability on the part of the corporate officer.  See <u>Loeffler</u>, 372 Pa. Super. at 447.

Pamela Troyan was not a personal participant as she did not perform the laser service or recommend it to Mrs. Charleston.  Rather, it was Barbara Lindner, an employee of the spa who recommended and performed the service.[66]  More importantly, Ms. Charleston did not testify that she relied upon any representation made by Salon Secrets or Ms. Troyan in deciding to have her laser service.[67]  The same can be said about Ms. Troyan's lack of knowledge regarding Dr. Burke's medical license.  Dr. Burke did not inform Ms. Troyan that his license had lapsed in October, 2006.[68]

More importantly, Mrs. Charleston did not testify that she relied upon any representation made by Salon Secrets or Ms. Troyan in deciding to have the laser service.[69]  She was not persuaded by any actions of Ms. Troyan or representations made by Ms. Troyan or the salon to receive the treatment.  Accordingly, Ms. Troyan cannot be said to have acted with misfeasance, but rather, nonfeasance.  See <u>Cohen v. Maus</u>, 297 Pa. 454 (1929) (directors of a corporation cannot be held individually liable for a conversion by the corporation and its general manager about which they knew nothing simply because they might have discovered the conversion by examining the corporate

---

[66] See deposition of plaintiff, Exhibit "C", N.T. 104-106.  Plaintiff had gotten services done by Ms. Lindner before and was already coming into the spa that day for eyelash extensions and a microdermabrasion.  <u>Id</u>. at N.T. 103-4.

[67] See deposition of plaintiff, Exhibit "C", N.T. 97-99.  Plaintiff initially came to the salon seeking eyelash extensions.  She returned on several occasions for eyelash extensions and did not decide to get laser hair removal until her appointment on February 10, 2007.  <u>Id</u>. at N.T. 103-104.

[68] See deposition of Dr. Burke, Exhibit "G", N.T. 46-48.

[69] See deposition of plaintiff, Exhibit "C", N.T. 97-99.  Plaintiff initially came to the salon seeking eyelash extensions.  She returned on several occasions for eyelash extensions and did not decide to get laser hair removal until her appointment on February 10, 2007.  <u>Id</u>. at N.T. 103-104.

records).

Additionally, Ms. Troyan also cannot be held liable as a sole shareholder for acting within her role as owner of the salon, unless she took steps outside that role. In <u>Zaborowski v. Hospitality Care Center of Hermitage Inc.</u>, 2002 WL 32129508 (Mercer Cty 2002) the individual defendants filed preliminary objections in the nature of demurrer which were sustained. Cassity and Bible were directors and officers of defendant Hospitality Care Center of Hermitage and they were sole shareholders. They contended that they could not be personally liable because the alleged actions were taken by them in their capacity as directors and officers of the corporate entity. The court stated the plaintiff failed to aver sufficient facts to support personal liability under the participation theory *because there are no allegations that they took actions separate from the actions they took as corporate officers*. The individual defendants could not be found negligent regarding the supervision of Hospitality's employees because their "position as corporate officers cannot, in and of itself, lead to imposing personal liability for the alleged negligence of Hospitality." See <u>Zaborowski</u>, 2002 WL 32129508 (citing <u>Chester-Cambridge Bank and Trust Co. v. Rhodes</u>, 346 Pa. 427 (1943)).

In view of the above cases, Ms. Troyan cannot be held personally liable for acting within her role as owner of Salon Secrets. There is no evidence that Ms. Troyan took separate actions that would make her **personally** liable. This differs from <u>Village at Camelback Property Owners Assn. Inc</u> because Pamela Troyan did not, as an individual, make any misrepresentations to plaintiff herself or personally participate in any negligent act. Furthermore, even if Salon Secrets' employee, Barbara Lindner, acted negligently, without any evidence that Ms. Troyan personally caused her to act negligently, that negligence does not give rise to a piercing of the corporate veil argument.

Plaintiffs may argue that as sole shareholder of Salon Secrets Ms. Troyan facilitated the practices that lead to the tortious conduct but the record is devoid of Ms. Troyan specifically

11

exhibiting behavior outside her role as owner of the company; and as owner, she had appropriate policies and procedures in place for the operation of the laser--her employees were trained on the proper use of the laser and as far as she knew, Dr. Burke was the medical director. Thus, any argument by plaintiffs asserting that Ms. Troyan facilitated the tortious conduct is without merit.

### D.    Count III Alleging Consumer Fraud (UTPCPL) Should Be Dismissed

Count III of the Amended Complaint should be dismissed because plaintiffs do not have sufficient evidence that the Salon Secrets or Pamela Troyan committed consumer fraud under the UTPCPL. Private actions are defined under the Act in 73 P.S. 201-9.2(a) as:

> (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S §201-9.2(a).  To prove liability under the UTPCPL, the plaintiff needs to present sufficient evidence that she justifiably relied upon the alleged misrepresentations made by defendants; a causal connection is not enough. Specifically, as Pennsylvania Superior Court held in Weinberg v. Sun Co., 740 A.2d 1152 (Pa. Super. 1999), that "[t]o bring a private cause of action under the [Consumer Protection Law], a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." **A justifiable reliance requires the plaintiff to show she justifiably bought the product because of the misrepresentations; a causal connection is not enough.** See Weinberg, 777 A.2d at 445. This standard applies to all sections of the Consumer Protection Law. See Hunt v. United States Tobacco Company, 538 F.3d 217, 224 (3rd Cir. 2008).

Specifically, a plaintiff must demonstrate that common law elements of justifiable reliance in order to sustain a private cause of action under the UTPCPL. Toy v. Metropolitan Life Insurance Co., 863 A.2d 1 (Pa. Super. 2004). In Hunt, Judge Ambro of the Third Circuit stated that the

Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision causation requirement that there must be a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm.[70]

There is insufficient evidence that Mrs. Charleston justifiably relied upon any representation made by Pamela Troyan or Salon Secrets regarding the laser procedure and/or presence of a medical director. Specifically, plaintiff decided on her own accord to seek out or try laser hair removal prior to receiving it at Salon Secrets. She discussed with Dr. Vause on May 16, 2006 that she may possibly want laser hair removal.[71] Accordingly, she knew about and considered laser hair removal before going to Salon Secrets.

Ms. Troyan was not at the salon at the time, she did not suggest the service.[72] She did not encourage her staff to suggest services using the Harmony device.[73] There is no evidence on record that Ms. Lindner represented anything in particular to plaintiff about the laser hair removal that was false.

Also important, there is no evidence of any justifiable reliance of plaintiff on any advertising about the laser services on the Salon Secrets website or elsewhere. Plaintiff testified she was not enticed to go to the salon because she read anything on the Salon's website regarding laser services

--------

[70] Accordingly, the Third Circuit held the plaintiff did not adequately allege that he justifiably relied on the defendant's deception because he did not allege the deception induced him to purchase the product. Id. at 227. The court stated that although the plaintiff alleges that he and the class relied on the presumption they were paying prices set by an efficient market, he does not show how knowledge that the market was inefficient would change his mind. Id. The court held the private consumer was required to show justifiable reliance in the defendant's alleged deception and there is not a presumption of justifiable reliance. Id. at 228.

[71] See deposition of plaintiff, Exhibit "C", N.T. 67.

[72] Id. at N.T. 109, 111-15. Plaintiff testified regarding who she interacted with at the salon during any of her visits, which did not involve Ms. Troyan.

[73] Id. at N.T. 114-15. Plaintiff testified no staff at the salon specifically drew her attention to the laser hair service prior to her appointment with Barbara Lindner on February 10, 2007.

or medical director.[74]  She also did not see any business cards or literature about any physician on the reception desk,[75] nor did any employee at the salon tell her that Dr. Burke was medical director.[76]

In the alternative, the UTPCLP is not applicable to claims against a salon and a salon owner under the UTPCPL based on the allegations that an improper and/or unsupervised medical procedure was performed.  Consumer protection laws were designed to thwart bushiness fraud in the statutory sense. Pirozzi v. Penske Olds-Cadillac-GMS, Inc., 605 A.2d 373, 413 Pa. Super. 308, *app. den.* 616 A.2d 985, 532 Pa. 665 (1992).

The Pennsylvania UTPCPL <u>does not</u> provide for a right of action against providers of professional services such as laser hair removal. *See e.g.* Foflygen v. R. Zemel, M.D., (P.C.), et al., 615 A.2d 1348 (Pa. Super. 1992); Gatten v. Merzi, 397 Pa. Super. 148 (1990). Because such laws are inapplicable to the provision of medical services, and plaintiffs alleged that the procedure at issue was a medical procedure performed under the supervision of Dr. Burke, plaintiffs' claim must fail for this additional reason.

### E.    Paragraph 287 of the Amended Complaint Claiming Threefold or Treble Damages Should be Dismissed

If plaintiffs' claims under the UTPCPL are dismissed, plaintiff is not entitled to treble damages.  The UTPCPL statute does allow for treble damages to be awarded when the act is violated, however awarding treble damages is discretionary. The court should not award them here. In exercising their discretion to award treble damages under the UTPCPL, courts should focus on the presence of intentional or reckless conduct. Schwartz v. Rockey, 932 A.2d 885, 593 Pa. 536 (2007).

---

[74]  See deposition of plaintiff, Exhibit "C", N.T. 110.

[75]  Id. at N.T. 110.

[76]  Id. at N.T.115.

With that in mind, there is no evidence of record that Pamela Troyan or Salon Secrets exhibited any intentional or reckless, wrongful conduct.  Plaintiffs claim moving defendants were reckless because the Salon operated with medical services without a medical doctor.  However, Ms. Troyan was not aware Dr. Burke was not currently acting as a medical director.  Although she knew he was resigning, she did not know he no longer held a valid Pennsylvania license and did not work at the salon as a medical director until after the incident of February, 2007.  In addition, employees of Salon Secrets also believed he continued to be medical director.[77]  Additionally, Dr. Burke even acted as though he were currently the medical director as he discussed the incident with Ms. Troyan.[78]  Through the end of 2006 and 2007 he shared the laser device with Salon Secrets, retained and used a key to pick up and drop the device at Salon Secrets.[79]

Equally important, the salon had polices and procedures in place to ensure safe practice.  No one disputes there was a skin test procedure that must be performed; and that patients were to complete a consent form.[80]  Ms. Lindner admits that she did not wait 24-48 hours to conduct a skin test, which could be construed as negligent, but not reckless.[81]  The salon had their policies and procedure in place to ensure safe practice.  As such, the record is devoid of any evidence that the conduct or Salon Secrets or Pamela Troyan was intentional, willful, wanton or reckless conduct.

---

[77] See deposition of Barbara Lindner, Exhibit "D", N.T. 46-47.  Ms. Lindner evidenced her belief after performing plaintiff's treatment because she immediately called Dr. Burke. See also depositions of Stephanie Burns, Exhibit "K", N.T. 39-40  and Kim Lancashire, Exhibit "L", N.T. 44.

[78] See deposition of Pamela Troyan, Exhibit "E", N.T.  42-46.

[79] See deposition of Dr. Burke, Exhibit "H", N.T. 189.

[80] See deposition  of Barbara Lindner, Exhibit "D", N.T. 98-99, see also deposition of Pamela Troyan, Exhibit "E", N.T. 49-50.

[81] See deposition of Barbara Lindner, Exhibit "D", N.T. 98-99.

F.    **Count IV Alleging Common law Fraud Should Be Dismissed**

The elements of common law fraud are: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury was proximately caused by the reliance. Zaborowski v. Hospitality Care Center of Hermitage Inc., 2002 WL 32129508 (Mercer Cty 2002) (citing Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 889 (1994)). A misrepresentation, however, must be distinguished from puffery. Id. See Berkebile v. Brantly Helicopter Corp., 462 Pa. 83, 103, 337 A.2d 893, 903 (1975). Puffery is "an exaggeration or overstatement expressed in broad, vague and commendatory language." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993). Such speech is "offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer, and on which no reasonable [person] would rely." Id., W. Page Keeton, Prosser and Keeton on the Law of Torts §109 at 757 (5th ed. 1984). "It is common knowledge and may always be assumed that any seller will express a favorable opinion concerning what he has to sell; and when he praises it in general terms, without specific content or reference to facts, buyers" understand that they cannot literally rely upon such representations. Restatement (Second) of Torts §542 cmt. e (1978).

In Zaborowski, supra, the Court of Common Pleas of Mercer County cited Huddleston v. Infertility Center of America Inc., 700 A.2d 453 (Pa. Super. 1997). The fertility center claimed it was the "premier surrogacy program in the country." The Huddleston court held such a statement constituted puffery with no legal consequence. Id. Similarly, in Zaborowski the plaintiff's reliance on the defendants' representation was not justifiable where it stated: "[a]s always, our priority is to provide quality care and to provide a safe and comfortable environment to our residents." This statement was deemed elusive and did not constitute a representation. Rather, it was puffery. See

16

Zaborowski, 2002 WL 32129508.

There is no evidence that plaintiff justifiably relied upon any representation made by Salon Secrets regarding the laser service or the status of Dr. Burke as medical director. Plaintiff was not enticed to go to the salon and get the laser hair service because she read anything on the Salon's website.[82] She also did not see any business cards of any physician on the reception desk.[83] She was aware of the service prior to February 10, 20007. She discussed it with Dr. Vause on May 16, 2006.[84]

The fact that she may have seen a sign in the reception area that mentioned Dr. Burke does not compel the denial of this motion. She did not remember what this sign said.[85] In fact, she could not recall if the sign was there on February 10, 2007.[86]

As it relates to Pamela Troyan, the elements of Common Law Fraud are not satisfied because Ms. Troyan did not have the intent to mislead. At the time of plaintiff's treatment, it was Ms. Troyan's understanding and belief that the Harmony Laser was being used according to regulations and the Salon's procedures. Ms. Troyan testified that she believed it was acceptable for the physician/medical director to be off site when an esthetician used a laser to perform hair removal.[87] It was not until on or about December 8, 2007 that she recalls having a conversation with Dr. Burke during which she learned his licensed in Pennsylvania had lapsed so he could no longer be medical director.[88] She testified that prior to this phone call, she did not know or have a suspicion that Dr.

---

[82] See deposition of plaintiff, Exhibit "C", N.T. 110.

[83] Id. at N.T. 110.

[84] Id. at N.T. 67.

[85] Id. at N.T. 111-112.

[86] Id. at 113-114

[87] See deposition of Pamela Troyan, Exhibit "E", N.T. 200-204.

[88] Id. at N.T. 234.

17

Burke did not have a medical license in Pennsylvania nor that her employees could not use the Harmony device without a medical director.[89]  Accordingly, Ms. Troyan did not possess the requisite knowledge to make any misrepresentation.

In addition, regarding plaintiffs' claim that there was a misrepresentation about a skin test, Ms. Troyan herself did not make any representations that a skin test was not necessary.  In fact, she testified that all African American patients were required to have a skin test.[90]  She also understood that before the laser hair removal procedure was undertaken, the person performing the procedure must inspect the test spot 24-48 hours after the test.[91]  It was Ms. Troyan's understanding that a skin test was necessary, as a licensed aesthetician who performed the treatment, Ms. Lindner was aware of the same.[92]  Ms. Troyan testified that the estheticians, as professionals in their field,  were responsible for overseeing and enforcing the salon's policies with regard to the use of the Harmony device.[93]

Last, there is simply no evidence that the alleged injury was proximately caused by any alleged representation and/or justifiable reliance.  Even if Dr. Burke was the medical director the outcome would not have been any different.  There is no evidence that Ms. Lindner would have consulted him prior to the service.

Thus, Ms. Troyan did not make any misrepresentations to plaintiff and summary judgment of Count IV, common law fraud is appropriate.

---

[89]  See deposition of Pamela Troyan, Exhibit "E", N.T. 26-27.

[90]  Id. at N.T. 49-50.

[91]  Id. at N.T. 49-50.

[92]  See deposition of Barbara Lindner, Exhibit "D", N.T. 98-99.

[93]  See deposition of Pamela Troyan, Exhibit "E", N.T. 58-59.

## V.    **RELIEF**

For the reasons stated herein above, summary judgment is appropriate with regard to Pamela Troyan since there is no evidence sufficient to pierce the corporate veil of Salon Secrets, the employer of Barbara Lindner, who performed the laser hair removal at issue, and insufficient evidence with regard to the claims of consumer fraud under the UTPCPL, common law fraud, treble and punitive damages regarding both Pamela Troyan and Salon Secrets Day Spa, Inc.

**BENNETT, BRICKLIN & SALTZBURG LLC**
**Respectfully submitted,**

BY: _Victoria M. Komarnicki 1-14-11_
**VICTORIA M. KOMARNICKI**
**MEGHAN F. HENRY**
**1601 Market Street, 16th Floor**
**Philadelphia, PA 19103**
**(215) 561-4300**

19

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH CHARLESTON and** | : | |
| **LARRY CHARLESTON, w/h** | : | |
| | : | **CIVIL ACTION** |
| **vs.** | : | |
| | : | |
| **SALON SECRETS DAY SPA, INC. and** | : | **NO.  08-5889** |
| **PT LASERS, LLC and** | : | |
| **PAMELA A. TROYAN and** | : | |
| **BARBARA A. LINDNER and** | : | |
| **THOMAS J. BURKE, D.O. and** | : | |
| **JOHN DOE, Nos. 1-5** | : | |

## CERTIFICATE OF SERVICE

  The undersigned certifies that this document has been filed electronically and is available for viewing and downloading from the ECF System.  Service is thereby made on:

Andrew D. Swain, Esquire
The Swain Law Firm, P.C.
2410 Bristol Road
Bensalem, PA 19020

E. Chandler Hosmer, Esquire
Marshall, Dennehey, Warner,
Coleman & Goggin
620 Freedom Business Center
Suite 300
King of Prussia, PA 19406

Glenn A. Ricketti, Esquire
Margolis Edelstein
Independence Square West
601 Walnut Street, 4th Floor
Philadelphia, PA 19106

J. Patrick Holahan, II, Esquire
J. Patrick Holahan, II & Associates, P.C.
113 South Broad Street, P.O. Box 818
Kennett Square, PA 19348-0818

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY: _Victoria M. Komarnicki_

**VICTORIA M. KOMARNICKI**
**1601 Market Street, 16th Floor**
**Philadelphia, PA 19103**
**215-665-3303**

DATE: _1-14-11_