IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH CHARLESTON & LARRY CHARLESTON (w/h), | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO.  08-5889 |
| | : | |
| SALON SECRETS DAY SPA, INC. and | : | |
| PT LASERS, LLC and PAMELA A. TROYAN | : | |
| and BARBARA A. LINDNER and THOMAS J. | : | |
| BURKE, D.O. and JOHN DOE, Nos. 1 – 5, | : | |
| Defendants | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2011, upon consideration of

the Motion for Summary Judgment pursuant to Federal Rule 56 of Defendant, Thomas J. Burke,

D.O., any Response thereto, it is hereby ORDERED and DECREED that said Motion is

GRANTED and all claims against Thomas J. Burke, M.D., including any and all crossclaims, are

hereby dismissed with prejudice.

BY THE COURT:

_____ J.

26/1618832.v1/08064.00112
MARSHALL, DENNEHEY, WARNER
COLEMAN & GOGGIN
BY:    E. CHANDLER HOSMER, III, ESQUIRE          ATTORNEYS FOR DEFENDANT,
       CAROLYN B. DIGIOVANNI, ESQUIRE            Thomas J. Burke, D.O.
       ATTORNEY ID NOS.: 28499/50405
620 Freedom Business Center, Suite 300
King of Prussia, Pa 19406
Phone:  (610) 354-8250 / Fax: (610) 354-8299
echosmer@mdwcg.com

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH CHARLESTON & LARRY | : | CIVIL ACTION |
| CHARLESTON (w/h), | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | NO.  08-5889 |
| | : | |
| SALON SECRETS DAY SPA, INC. and | : | |
| PT LASERS, LLC and PAMELA A. TROYAN | : | |
| and BARBARA A. LINDNER and THOMAS J. | : | |
| BURKE, D.O. and JOHN DOE, Nos. 1 – 5, | : | |
| Defendants | : | |

**MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 56  OF DEFENDANT, THOMAS J. BURKE, D.O.**

Defendant, Thomas J. Burke, D.O. ("Moving Defendant") moves for summary judgment

in his favor as to all claims and crossclaims asserted against him as neither plaintiffs nor any of

the cross-claiming co-defendants have  produced any expert reports against him.  Moreover, all

theories of liability asserted by Plaintiffs fail to state a claim upon which relief may be granted.

In support thereof, Dr. Burke avers as follows:

1. Plaintiffs instituted this personal injury action on December 19, 2008 with respect to a

February 10, 2007 laser hair removal procedure that was performed on Plaintiff, Deborah

Charleston by co-defendant, Barbara Lindner,  at co-defendant, Salon Secrets Inc., which was

owned by co-defendant, Pamela A. Troyan.  Prior to April 2006, Dr. Burke had been acting as a Medical Director of Salon Secrets.  Plaintiffs allege that Ms. Lindner was Dr. Burke's agent because he was acting as a medical director of Salon Secrets and therefore he is vicariously liable for her actions.  In the alternative, they allege that Dr. Burke is liable because he knew or should have known that the laser was being used without his or any medical supervision.

2. In their Amended Complaint, Plaintiffs alleged several theories of liability against Dr. Burke,  including professional negligence, lack of informed consent, violations of UTPCPL, common law fraud, negligent misrepresentation, negligence per se, negligent infliction of emotional distress, loss of consortium, and punitive damages.  A true and correct copy of Plaintiff's Amended Complaint is attached hereto as Exhibit "A".

3. After a series of extensions with respect to discovery and expert deadlines,, this Honorable Court entered an Order dated August 5, 2010 which provided in pertinent part, that Plaintiffs *shall* file their expert reports *no later than October 1, 2010* and all dispositive motions, if any, shall be filed on or before January 14, 2011.  A true and correct copy of this Honorable Court's Order is attached hereto as Exhibit "B".

5. As of the date of the filing of this Motion, Plaintiffs have not produced expert reports, on liability and/or damages, and are in violation of this Honorable Court's Order dated August 5, 2010.

6. Accordingly, Plaintiffs have failed to meet their burden of proof with respect to any of their alleged theories of liability as required under Pennsylvania law.

7. Moreover, Plaintiffs have failed to produce evidence essential to support the theories of liability pled.

8. Based on the undisputed facts, now that discovery is closed, Plaintiffs have not, and cannot establish the underlying premises which formulate the bases of their theories of liability asserted against Dr. Burke.

9. To the contrary, the evidence of record demonstrates the absence of a requisite relationship between Dr. Burke, the co-defendants, and the Plaintiff sufficient to carry these claims to trial.

10. There was an agreement between Ms. Troyan and Dr. Burke which formed  PT Lasers, LLC. in 2004.  The corporation leased the Harmony device which was to be used by Dr. Burke's private practice and Salon Secrets Day Spa., Inc. (See, Deposition testimony of Dr. Burke at page 12 and, deposition testimony of Pam Troyan at page 12, attached collectively hereto as Exhibit "C").

11. Prior to April 2006, Dr. Burke had been acting as the Medical Director of Salon Secrets.  (See, Deposition testimony of Dr. Burke at pg. 24 attached hereto as Exhibit "D").

12. As part of the agreement for Dr. Burke to act as Medical Director, Ms. Troyan paid for half of Dr. Burke's malpractice insurance. (See, Deposition testimony of Pam Troyan at pg. 134 attached hereto as Exhibit "E").

13. There were no written agreements regarding Dr. Burke's role as Medical Director of Salon Secrets Day Spa, Inc. (See, Deposition Testimony of Pam Troyan at pages 38, 134 attached collectively hereto as Exhibit "F").

14. Dr. Burke was never an employee of Salon Secrets Day Spa, Inc.  (See, Deposition testimony of Dr. Burke at pages 17, 19 attached hereto as Exhibit "G").

15. Dr. Burke never trained any of the Spa employees on the Harmony system, including Ms. Lindner. (See, Deposition testimony of Dr. Burke pg. 22; Deposition Testimony of Barbara Lindner at pg 18 attached collectively hereto as Exhibit "H ").

16. Ms. Lindner was hired by Pam Troyan as an employee of Salon Secrets and performed laser hair removal services on Mrs. Charleston as an employee of Salon Secrets. (See, Deposition of Barbara Lindner at pg. 9-10, 254 and Deposition testimony of Pam Troyan at pgs. 64-68 attached collectively hereto as Exhibit "I").

17. Dr. Burke never used the Harmony system on Mrs. Charleston or any paying patient at Salon Secrets Day Spa. (See, deposition testimony of Dr. Burke at pg. 72; deposition testimony of Pam Troyan at pgs. 199-200; deposition testimony of Mrs. Charleston at pg. 102-105, 179-181 attached collectively hereto as Exhibit "J").

18. Mrs. Charleston never met Dr. Burke, never spoke to him, and never received any literature bearing Dr. Burke's name or that described him as the Medical Director. (See, deposition testimony of Mrs. Charleston at pages 115 and 210, attached hereto as Exhibit "K").

19. Dr. Burke only performed Botox at the Spa and stopped working at the Spa in March, 2006. (See Deposition testimony of Dr. Burke at pg. 25, 72 and Deposition testimony of Pam Troyan at pg. 101, 321-322, and supplemental responses of Pam Troyan to Dr. Burke's Request for Production of Documents attached collectively hereto as Exhibit "L").

20. Dr. Burke stopped being the Medical Director as of April 21, 2006 and ended his relationship with Salon Secrets Day Spa. (See, Deposition testimony of Dr. Burke at pages 25, 83 attached hereto collectively as Exhibit "M").

21. Dr. Burke wrote to the Pennsylvania Joint Underwriting Association on March 18, 2006 requesting cancellation of his medical malpractice insurance effective April 21, 2006. (See,

Deposition testimony of Dr. Burke at pg. 83-85, Exhibit B-15, and Supplemental Answers of Dr. Burke to Interrogatories of Pam Troyan, attached hereto as Exhibit "N").

22. A refund check from the Pennsylvania Joint Underwriting Association dated May 9, 2006 was mailed to Salon Secrets Day Spa, Inc. The refund check from Dr. Burke's early cancellation of his medical malpractice insurance was cashed by the Salon and then deposited into the PT Laser, LLC account. ( See, Deposition testimony of Dr. Burke at pgs. 85-86 and Supplemental Responses (Exhibit "M") and Amended Supplemental Responses of Dr. Burke to the Interrogatories of Pam Troyan and Salon Secrets Day Spa attached hereto collectively as Exhibit "O").

23. Dr. Burke was licensed to practice medicine in Pennsylvania from 1997 until October 31, 2006. (See, Deposition testimony of Dr. Burke at pgs. 44-55 attached hereto as Exhibit "P").

24. In or around May 2006, Jason Carpenter, Vice President of MedX who sold the laser Hair removal device to PT Lasers, LLC, was called by Pam Troyan who informed him that Dr. Burke had resigned his positioned as Medical Director of Salon Secrets Day Spa was no longer acting as the Medical Director for Salon Secrets Day Spa and asked him to assist in finding a new medical director. (See, Affidavit of Jason Carpenter attached hereto as Exhibit "Q").

25. On May 22, 2006, Jason Carpenter sent an e-mail to Dr. Burke asking if he (Dr. Burke) had any objection to his assisting Ms. Troyan in finding a new medical director. (See, Affidavit, Exhibit "Q").

26. Anna Marie Durso , a patient who came to see Dr. Burke at Salon Secrets for injections in early 2006, was advised in June of 2006 by the receptionist at Salon Secrets that Dr.

Burke was no longer there. (See, deposition testimony of Ms. Dorso at pgs. 33, 36 attached hereto as Exhibit "R").

27.   After being told Dr. Burke was no longer with Salon Secrets, Anna Marie Durso saw Dr. Burke in his private practice in Newark, Delaware for the first time on January 5, 2007. (See, deposition of Mrs. Durso pg. 39 and Supplemental Responses of Thomas J. Burke, D.O. to Interrogatories of Salon Secrets Day Spa, Inc. and Pam Troyan attached hereto collectively as Exhibit "S").

28.   In order to establish a *prima facie* case of medical malpractice, Plaintiffs must prove four elements:

> a) that the medical provider owed a duty to the patient;
>
> b) that the provider breached that duty;
>
> c) that the breach of duty was the approximate cause of a substantial factor in bringing about the harm suffered by the patient; and
>
> d) that the damages suffered by the patient were the direct result of the harm.

Montgomery v. South Philadelphia Medical Group, Inc., 441 Pa. Super. 146, 656 A.2d 1385, 1390 (1995) (Citing Mitzelfelt v. Kamrin, 525 Pa. 54, 584 A.2d 888, 891 (1990)).

29. The record is devoid of any evidence, testimonial or documentary, critical of the care and treatment provided by Moving Defendant, Thomas J. Burke, D.O.

30.   Moreover, there is no evidence of record to establish that Dr. Burke owed a duty of care to Plaintiff-wife.

31. The existence of a duty of care is a question of law, not a question of fact.  Wisniski v. Brown & Brown Ins. Co., 906 A.2d 571 (Pa. Super. 2006).

32.   Without establishing a duty, a Plaintiff can have no cause of action against a defendant regardless of that Defendant's conduct.

33.   The evidence of record establishes that there is no genuine issue of material fact and therefore, Thomas J. Burke, D.O. is entitled to judgment as a matter of law.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By: _____
E. CHANDLER HOSMER, III, ESQUIRE
CAROLYN B. DIGIOVANNI, ESQUIRE
Attorneys for Defendant,
Thomas J. Burke, D.O.

Date: January 14, 2011

8

26/1620960.v1/08064.00112
MARSHALL, DENNEHEY, WARNER
COLEMAN & GOGGIN
BY:   E. CHANDLER HOSMER, III, ESQUIRE
     ATTORNEY ID NO.: 28499
     CAROLYN B. DIGIOVANNI
     ATTORNEY ID NO.: 50405
620 Freedom Business Center, Suite 300
King of Prussia, Pa 19406
Phone:  (610) 354-8250 / Fax: (610) 354-8299
echosmer@mdwcg.com

ATTORNEYS FOR DEFENDANT,
Thomas J. Burke, D.O.

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH CHARLESTON & LARRY CHARLESTON (w/h), | : | CIVIL ACTION |
| Plaintiffs | : | |
| | : | |
| v. | : | NO.  08-5889 |
| | : | |
| SALON SECRETS DAY SPA, INC. and | : | |
| PT LASERS, LLC and PAMELA A. TROYAN | : | |
| and BARBARA A. LINDNER and THOMAS J. | : | |
| BURKE, D.O. and JOHN DOE, Nos. 1 – 5, | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT,
THOMAS J. BURKE, D.O'S MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

## I.    INTRODUCTION

Defendant, Thomas J. Burke, D.O., seeks summary judgment in his favor because

Plaintiffs have failed to produce expert testimony required to support their claims under

Pennsylvania law and there is no evidence of record, testimonial or documentary, establishing

any theory of liability against Dr. Burke.

## II.    FACTUAL BACKGROUND

Plaintiffs initiated this personal injury action on December 19, 2008 against., inter alia, Moving Defendant, Thomas J. Burke, D.O.  Plaintiffs Complaint relates to the February 10, 2007 laser hair removal procedure performed on Deborah Charleston by co-defendant, Barbara Lindner, at co-defendant Salon Secrets Day Spa, Inc., which was owned by co-defendant, Pamela A. Troyan.  Prior to 2006, Dr. Burke had been acting as the Medical Director of Salon Secret Day Spa, Inc.  Plaintiffs allege that Ms. Lindner was Dr. Burke's agent because he was acting as the Medical Director of Salon Secrets and therefore is vicariously liable for her actions. In the alternative, they allege that Dr. Burke is liable because he knew or should have known that the laser was being used without his or any medical supervision.

On June 30, 2009 this Honorable Court issued a Scheduling Order for this matter which set the close of discovery for December 31, 2009.  As Plaintiffs' counsel required more time to complete his discovery, two additional extensions were granted.  The final order provided that  all fact discovery shall be completed on or before October 29, 2010; plaintiffs shall forward their expert reports no later than October 1, 2010; Defendants shall forward their expert reports on or before November 29, 2010; and all dispositive motions shall be filed no later than January 14, 2011.  Despite an additional ten (10) months for discovery, Plaintiffs were unable to produce any evidence to support their theories of liability asserted against Dr. Burke.

The following evidence has been revealed through discovery:

- There was an agreement between Ms. Troyan and Dr. Burke which formed  PT Lasers, LLC. in 2004.  The corporation leased the Harmony device which was to be used by Dr. Burke's private practice and Salon Secrets Day Spa., Inc.

- Prior to April 2006, Dr. Burke had been acting as the Medical Director of Salon Secrets.

2

- As part of the agreement for Dr. Burke to act as Medical Director, Ms. Troyan paid for half of Dr. Burke's malpractice insurance.

- There were no written agreements regarding Dr. Burke's role as Medical Director of Salon Secrets Day Spa, Inc.

- Dr. Burke was never an employee of Salon Secrets Day Spa, Inc.

- Dr. Burke never trained any of the Spa employees on the Harmony system, including Ms. Lindner.

- Ms. Lindner was hired by Pam Troyan as an employee of Salon Secrets and performed laser hair removal services on Mrs. Charleston as an employee of Salon Secrets.

- Dr. Burke never used the Harmony system on Mrs. Charleston or any paying patient at Salon Secrets Day Spa.

- Mrs. Charleston never met Dr. Burke, never spoke to him, and never received any literature bearing Dr. Burke's name or that described him as the Medical Director.

- Dr. Burke only performed Botox at the Spa and stopped working at the Spa in March, 2006.

- Dr. Burke stopped being the Medical Director as of April 21, 2006 and ended his relationship with Salon Secrets Day Spa.

- Dr. Burke wrote to the Pennsylvania Joint Underwriting Association on March 18, 2006 requesting cancellation of his medical malpractice insurance effective April 21, 2006.

- A refund check from the Pennsylvania Joint Underwriting Association dated May 9, 2006 was mailed to Salon Secrets Day Spa, Inc. The refund check from Dr. Burke's early cancellation of his medical malpractice insurance was cashed by the Salon and then deposited into the PT Laser, LLC account.

- Dr. Burke was licensed to practice medicine in Pennsylvania from 1997 until October 31, 2006.

- In or around May 2006, Jason Carpenter, Vice President of MedX who sold the laser Hair removal device to PT Lasers, LLC, was called by Pam Troyan who informed him that Dr. Burke had resigned his positioned as Medical Director of Salon Secrets Day Spa was no longer acting as the Medical Director for Salon Secrets Day Spa and asked him to assist in finding a new medical director.

- On May 22, 2006, Jason Carpenter sent an e-mail to Dr. Burke asking if he (Dr. Burke) had any objection to his assisting Ms. Troyan in finding a new medical director.

3

- Anna Marie Durso , a patient who came to see Dr. Burke at Salon Secrets for injections in early 2006, was advised in June of 2006 by the receptionist at Salon Secrets that Dr. Burke was no longer there.

- After being told Dr. Burke was no longer with Salon Secrets, Anna Marie Durso saw Dr. Burke in his private practice in Newark, Delaware for the first time on January 5, 2007.

## III.   ARGUMENT

### A.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L.Ed. 2d 202, 106 S.Ct. 2505 (1986); Nautilus Insurance Company v. Gardner, 2005 U.S. Dist. LEXIS 4423, 6 (E.D.Pa. Mar. 21, 2005)(O'Neill, J.). An issue is material only if the dispute over the facts "might affect the outcome of the suit under the governing law." Id.

When considering a motion for summary judgment, "the evidence of the nonmovant is to be believed[,]" and he or she is entitled to the benefit of all reasonable inferences. Anderson, 477 U.S. at 255. See also Sempier v. Johnson & Higgins, 45 F.3d 724, 727 (3d Cir. 1995), cert. denied, 515 U.S. 1159 (1995). Importantly, however, the nonmovant "must present affirmative evidence to defeat a properly supported motion for summary judgment," and "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." Anderson, 477 U.S. at 252, 257. "Where the record as a whole could not lead a rational trier of fact to find

for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 547, 587 (1986) (internal citation omitted).[1]

**B.      IN THE ABSENCE OF EXPERT TESTIMONY, PLAINTIFFS CANNOT ESTABLISH A PRIMA FACIE CASE OF NEGLIGENCE AGAINST THOMAS J. BURKE, D.O.**

It is settled law in Pennsylvania that in order to establish a *prima facie* case of negligence, the Plaintiff must prove the following four elements:

> a) that the medical provider owed a duty to the patient;

> b) that the provider breached that duty;

> c) that the breach of duty was the proximate cause or a substantial factor in bringing about the harm suffered by the patient; and

> d) that the damages suffered by the patient were the direct result of the harm.

Montgomery v. South Philadelphia Medical Group, Inc., 441 Pa. Super. 146, 656 A.2d 1385, 1390 (1995) (*citing* Mitzelfelt v. Kamrin, 526 Pa. 54, 584 A.2d 888, 891 (1990)).

Expert testimony is required to establish the recognized standard of care attributable to Moving Defendant under like circumstances. Strain v. Ferroni, 405 Pa. Super.349, 592 A.2d 698, 701 (1991) (*citing* Tarter v. Linn, 396 Pa. Super.155, 578 A.2d 453 (1990)).  Further, expert testimony must be provided that the Moving Defendant's conduct varied from the acceptable medical practice. Montgomery v. South Philadelphia Medical Group, Inc., 441 Pa. Super. 146, 656 A.2d 1385, 1390 (1995).  Expert testimony must be submitted to establish that Moving Defendant negligently carried out his professional duties and departed from the standard of care exercised by the others in the community.  Id.  Expert testimony must be submitted to establish

---

[1] Alternatively, Moving Defendant seeks dismissal of this action pursuant to Federal Rule of Civil Procedure 41 (b) which provides that a Defendant may move to dismiss the action if the plaintiff fails to prosecute or to comply with the rules or a court order.  After several extensions of the discovery deadlines, this Honorable Court issued an Order dated August 5, 2010 setting forth the deadlines as to fact discovery, the production of expert reports, and the filing of dispositive motions.  Pursuant to this Honorable Court's Order, Plaintiffs' counsel was mandated to provide their expert reports no later than October 1, 2010.  As of the date of filing of this Motion, Plaintiffs have not complied.  Accordingly, Moving Defendant, Thomas J. Burke, D.O. moves for dismissal of this action.

that the alleged negligence of Moving Defendant was the proximate cause of the harm suffered. Brannan v. Lankenau Hospital, 490 Pa. 488, 417 A.2d 96 (1980).

The only exception to this requirement that expert testimony be submitted in a medical malpractice action is when the "matter under investigation is so simple, and lack of skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of non professional persons." Chandler v. Cook, 438 Pa. 447, 451, 265 A.2d 794, 796 (1970) (citing Smith v. Yike, 412 Pa. 94 (1963)). Moving Defendant submits that this case is not so simple, or that the lack of skill or want of care so obvious that it is within the range of experience and comprehension of non-professional persons. Moving Defendant asserts that in order for Plaintiffs to sustain their burden of proof, expert testimony must be submitted on the specific type of care and treatment provided in this case and that their injuries were proximately caused by negligent conduct of the alleged tortfeasor. See Flickeringer Estate v. Ritsky, 452 Pa. 69, 305 A.2d 40 (1973). Thus, liability may not be imposed merely upon proof of negligent conduct by the tortfeasor, but, rather, hinges upon Plaintiff's proof of a causal nexus between the negligent conduct and the Plaintiff's asserted injury. See Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280 (1978); see also Maurer v. Trustees of the Univ. of Pennsylvania, 418 Pa. Super. 510, 614 A.2d 7754 (1992), appeal granted, 626 A.2d 1158 (1993). Expert testimony is required to establish both negligence and causation.

As stated previously, pursuant to Court Order, Plaintiffs were required to produce expert reports in support of their claims against Dr. Burke on or before October 1, 2010. More than three (3) months have elapsed and as of the date of the filing of this Motion, Plaintiffs have failed to submit expert reports critical of Dr. Burke. The absence of expert testimony to support their claim of professional negligence prevents Plaintiffs from sustaining their *prima facie* case

at the time of trial.  Accordingly, summary judgment on behalf of Dr. Burke is mandated as a

matter of law.[2]

### C.   PLAINTIFFS CANNOT ESTABLISH THAT DR. BURKE OWED PLAINTIFF-WIFE A DUTY OF CARE AND THEREFORE CANNOT SUSTAIN A CAUSE OF ACTION AGAINST HIM

The existence of a duty of care is a question of law, not a question of fact, for a Court to

decide.  Wisniski v. Brown & Brown Ins. Co., 906 A.2d 571 (Pa. Super. 2006).

> When considering the question of duty, it is necessary to determine
> whether a defendant is under any obligation for the benefit of the
> particular plaintiff . . . and, unless there is a duty upon the
> defendant in favor of the plaintiff that has been breached, there can
> be no cause of action based upon negligence.  Petrongola v.
> Comcast-Spectacor, L.P., 789 A.2d 204 (Pa. Super. 2001).

In Althaus v. Cohen,  562 Pa. 547, 756 A.2d 1166, the Pennsylvania Supreme Court

set forth five considerations in determining the existence of a physician patient relationship.

These considerations are : (1) the relationship between the parties; (2) the social utility of the

actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred: (4) the

consequence of imposing a duty upon the actor: and (5) the overall public interest in the

proposed solution.  Id. At 1169.  Applying these consideration here, it is plainly evident that

there was no relationship between Dr. Burke and Mrs. Charleston. By Mrs. Charleston own

testimony, she never met Dr. Burke, never spoke to him, and never received any literature

bearing Dr. Burke's name or that described him as the Medical Director of Salon Secrets. The

evidence of record further provides that Dr. Burke had ended his relationship with Salon Secrets

some ten (10) months before Mrs. Charleston's service, cancelled his medical malpractice

insurance coverage effective April 2006, and was no longer practicing in Pennsylvania at the

---

[2] As Plaintiffs cannot sustain their burden of proof on their principal theory of negligence, in the absence of expert testimony, plaintiff- husband's claim for loss of consortium, which is derivative of his wife's claim, is necessarily extinguished. Accordingly, Dr. Burke is entitled to summary judgment on this claim as well.

time of her treatment.  Accordingly, there was no special, direct relationship between Dr. Burke

and Mrs. Charleston to create a duty of care owed by a physician to his patient.

As Plaintiffs are unable to establish a direct relationship, in their Amended Complaint,

Plaintiffs attempt to rely upon the Restatement of Torts (Second) Section 342A to create a duty

on behalf of Dr. Burke so as to impose liability.  Section 324A of the Restatement of Torts

(Second)  provides in pertinent part:

> One who undertakes, gratuitously or for consideration, to render
> services to another which he should recognize as necessary for the
> protection of a third party or his things, is subject to liability to the
> third party for the physical harm resulting from his failure to
> exercise reasonable care to protect his undertaking, if:
>
> (a)      his failure to exercise reasonable care increases the
> risk of such harm, or
>
> (b)      he has undertaken to perform a duty owed by others
> to the third person, or
>
> (c)      the harm is suffered because of reliance of the other
> or third person upon the undertaking.

In regard to Section 324A of the Restatement, the Pennsylvania Supreme Court in

Cantwell v. Allegheny County, 483 A.2d 1350 (Pa. 1984), held that "(i)n order to state a cause of

action under §324A, a Complaint must contain factual allegations sufficient to establish the legal

requirement that the Defendant has undertaken 'to render services to another which he should

recognize as necessary for the protection of a third person. . . '." Id.  Applying the Cantwell

holding, the Plaintiffs' Amended Complaint must contain factual allegations sufficient to

establish the legal requirement that Dr. Burke undertook to render services to another which Dr.

Burke should have recognized as necessary for the protection of a third party.  Although

Plaintiffs have satisfied the notice pleading requirement of federal procedure, this case illustrates

that despite an additional ten months of discovery, Plaintiffs have been unable to unearth any

8

evidence to establish a *prima facie* case. In fact, the underpinnings of plaintiffs argument to support a claim under the Restatement are not based on evidence of record. Therefore, Plaintiffs cannot establish a *prima facie* case pursuant to Section 324A.

Extensive research has failed to unfold any Pennsylvania appellate or trial court cases on point establishing a duty under the factual scenario presented in the case at bar. In instances where courts have addressed Section 324A in the context of healthcare providers, it has been strictly construed and applied only where there has been a relationship between the doctor and the injured person (e.g. DiMarco v. Lynch, 583 A.2d 442 (Pa. 1990) where a physician duty found to third person where physician failed to advise his patient who was exposed to a communicable disease not to have sexual relations with other persons; Ward v. Most Health Services. Inc., 2008 U.S. Dist. LEXIS 61573 where a doctor patient relationship was established by the court where decedent's employer provided free annual physicals including chest x-rays to employees exposed to hazardous substances and the chest x-ray read as normal by a physician employee of Most Health Services was inaccurate with the patient dying from lung cancer a year later;*compare with* McCandless v. Edwards, 908 A.2d 900 (Pa. Super. 2006), appeal denied, 923 A.2d 1174 (Pa. 2007) where the court held that the defendant healthcare provider did not owe a duty of care to plaintiffs decedent, who overdosed on methadone stolen from defendant's facility and sold to decedent.)

As Dr. Burke and Mrs. Charleston did not have a physician patient relationship and for the reasons set forth above, Plaintiffs have failed set forth a *prime facie* case pursuant to Section 324A of the Restatement.

### D.  **PLAINTIFFS FAIL TO STATE A CLAIM FOR PUNITIVE DAMAGES**

In their prayer for relief or ad damnum clauses of the Amended Complaint, Plaintiff seeks punitive damages against *all* Defendants. As to Dr. Burke, no allegations of intentional, reckless, or outrageous conduct have been pled against him. In fact, Plaintiff concedes that Dr. Burke's actions were nothing more than "negligence" and that the primary cause of action is based on negligence. See, Exhibit A, Am. Compl. at paragraphs 155, 191, 212, 227, 325, and 329. As the alleged negligence is categorically insufficient for the imposition of punitive damages, Plaintiffs' claim for punitive damages necessarily fails.

### a.     **Punitive damages under Pennsylvania common law**

In Pennsylvania, the imposition of punitive damages is an extreme remedy which is reserved for exceptional circumstances. Brown v. Maxfield, 663 F. Supp. 1193, (E.D. Pa. 1987); Cochetti v. Desmond, 572 F.2d 102, (3d. Cir. 1978); see also Dowhouer v. Judson, 45 D & C. 4th 172 (C.P. Dauphin 2000) ("Pennsylvania courts have limited the availability of punitive damages only to 'punish the rare instances of extreme behavior").

Under Pennsylvania common law, punitive damages are "damages, other than compensation or nominal damages, awarded against a person to punish him for his outrageous conduct". Restatement of Torts (Second) § 908(1);  Feld v. Merriam, 506 Pa. 383, 395, 485 A.2d 742, 747 (1984) (holding trial court erred in submitting issue of punitive damages to jury); Chambers v. Montgomery, 411 Pa. 339, 344, 192 A.2d 355, 358 (1963) (vacating punitive damages award, holding that the issue of punitive damages should have been taken from jury). "Punitive damages are appropriate to punish and deter only extreme behavior and, even in the rare instance in which they are justified, are subject to strict judicial control." Martin v. Johns-Manville Corp., 508 Pa. 154, 169, 494 A.2d 1088, 1096 (1985), reversed on other ground, 528

A.2d 947 (1987).  As noted by the Superior Court, "the purpose of punitive damages is to punish outrageous and egregious conduct done in a reckless disregard of another's rights; it serves a deterrence as well as punishment function."  Schecter v. Watkins, 395 Pa. Super. 363, 383-84, 577 A.2d 585, 5959, appeal denied, 526 Pa. 638, 584 A.2d 320 (1990).

The burden of proof with respect to a punitive damages claim is significant. Pennsylvania law does not permit the imposition of punitive damages unless the evidence establishes that the Defendant's conduct is "outrageous, because of the Defendant's evil motive or his reckless indifference to the rights of others."  Restatement of Torts (Second) § 908, comment b; Feld, 506 Pa. at 395, 485 A.2d at 747; Chambers, 441 Pa. at 344, 192 A.2d at 358.

In assessing whether punitive damages are appropriate, the motive for the tortfeasor's act must be taken into account, not just the nature of the act itself or the relationship of the parties. See, e.g., Martin, 508 Pa. at 170, 494 A.2d at 10906 (quoting Restatement of Torts [Second] § 908(2)). *The state of mind of the actor is vital.*  The act or failure to act, must be intentional, reckless or malicious."  Feld, 506 Pa. at 396, 485 A.2d at 748 (emphasis added).  Punitive damages may not be assessed against a Defendant whose conduct constitutes ordinary negligence such as inadvertence, mistake or errors of judgment.  Martin, 508 Pa. at 170, 494 A.2d at 1097. Punitive damages are not justified if the Defendant's mental state rises only to the level of ordinary negligence or even gross negligence.  Martin, 508 Pa. at 172, 494 A.2d at 1098.

In determining whether a Defendant exhibits a evil motive or reckless indifference to the rights of others, there must be evidence that the Defendant actually knew of facts that created a high risk of physical harm to the Plaintiff.  Then, the defendant must have proceeded to act in conscious disregard of, or indifference to, that risk.  See, e.g., Martin, 508 Pa. at 171-72 n. 12, 494 A.2d at 1097 n.12.  Reckless indifference to the interests of others has been said to mean that

11

"the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probably that harm would follow." Evans v. Philadelphia Transp. Co., 418 Pa. 567, 574, 212 A.2d 440, 443 (1965); see also Lewis v. Miller, 374 Pa. Super. 515, 520, 543 A.2d 590, 592 (1988) (noting that wanton conduct, as required for imposition of punitive damages, requires a state of mind in which the tortfeasor realizes the danger to the Plaintiff and disregards it to such a degree that "there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.").

In a 2005 decision clarifying the "reckless indifference" requirement, the Pennsylvania Supreme Court held that a "failure to appreciate the degree of risk" claim – such as the one asserted by Plaintiffs here – cannot form the basis of an award of punitive damages. Hutchison v. Luddy, 582 Pa. 114, 123, 870 A.2d 766, 771 (2005). In so holding, the Court explained that there "two very different types of state of mind as to reckless indifference." Id. at 122, 870 A.2d at 771. The first type is where the actor "knows, or has reason to know. . .of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or fails to act, in conscious disregard of, or indifference to, that risk." Id. at 122-23, 870 A.2d at 771 (internal citation omitted). The second type is where the "actor had such knowledge, or reason to know, of the facts, *but does not realize or appreciate the high degree of risk involved,* although a reasonable man in his position would do so." Id. (internal citation omitted) (emphasis added).

The Hutchison Court rejected the second type of mental state as a basis for punitive damages awards and, thus, affirmed the settled principle that a "failure to appreciate the degree of risk from a known danger" is insufficient to support an award for punitive damages based on reckless indifference. Id. at 123, 870 A.2d at 771. The Court explained that " '[t]he only purpose

12

of punitive damages is to deter outrageous conduct.  It is impossible to deter a person from taking risky action if he is not conscious of the risk.' "  Id. (internal citation omitted).  The Hutchison Court, thus, summarized the testing for punitive damages based on reckless indifference as follows:

> [I]n Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a Defendant had a subjective appreciation of the risk of harm to which the Plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in *conscious disregard* of that risk.

Id. at 124, 870 A.2d at 772 (internal citation omitted) (emphasis added).

### b. Punitive Damages Under MCARE

In March of 2002, the punitive damages provision of HCSMA was supplanted by the punitive damages provision of MCARE Act.  40 P.S. § 1303.505 (2002).  The MCARE Act limits punitive damages against health care providers to cases involving "willful or wanton conduct or reckless indifference to the rights of others."  40 P.S. § 1303.505(a).  Under MCARE, a showing of gross negligence is insufficient to support punitive damages.  40 P.S. § 1303.505(b).  Finally, under the Act, punitive damages may be imposed for vicarious liability only if the health care provider knew of and allowed the outrageous conduct.  40 P.S. § 1303.505(c).   Importantly, the General Assembly's implementation of the punitive damages provision speaks to the impropriety of such awards in the vast majority of malpractice cases, and acts as a persuasive argument against the imposition of punitive damages in this case.

It is evident here that Plaintiff's entire theory of liability is inconsistent with the requirements for punitive damages under Pennsylvania law.  Because Plaintiff's claims – at most – sound in negligence or gross negligence, punitive damages are unavailable to them as a matter of law.

13

**c.    Vicarious Liability**

The Pennsylvania General Assembly has largely curtailed the ability of a litigant to recover exemplary damages against a healthcare provider who is only vicariously liable.  Under MCARE, a plaintiff may not recover punitive damages against a healthcare provider on a vicarious liability theory, unless the healthcare provider had "actual knowledge" of outrageous misconduct by its agent, but nonetheless allowed that misconduct to continue.   Dean v. Community Medical Center, 46 Pa. D&C. 4th 334, 344 (C.P. Lackawanna 2000).  The courts have referred to this as an "injection of a scienter element into the respondeat superior equation," and have recognized that the scienter requirement represents a significant departure from common law.   Id. at 342 (explaining that the scienter requirement is a "substantive[] modif[ication] of Pennsylvania law regarding the vicarious liability of a healthcare provider for punitive damages based upon the conduct of its agent").

> Thus, pursuant to § 1303.505 of MCARE, which governs here:
>
> Punitive damages shall not be awarded against a healthcare provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party knew of or allowed the conduct by its agent that resulted in the award of punitive damages.

40 P.S.§ 1303.505.  By its express terms, therefore, the statute requires **actual knowledge** on the part of the principal, of its agent's outrageous conduct,  in order to recover damages against the vicariously liable healthcare provider.

In Zazzera v. Roche, the court explained the actual knowledge requirement as follows: "[A] health care provider may not be vicariously liable for exemplary damages unless it had actual knowledge of the [agent's] wrongful conduct and nevertheless allowed it to occur."  54 Pa. D.&C.4th at 238 (construing the identical provision in the predecessor statute to MCARE, 40 P.S.

§ 1301.812-A(c)).  Thus, a patient must "aver and establish that the health care principal was cognizant of the agent's willful, wanton or recklessly indifferent treatment and allowed the conduct to proceed unabated."  Id.; See also Dean, 46 Pa. D.&C.4th at 344 (dismissing punitive damages claim against principal where "[t] the complaint [was] devoid of any indication that [the] principal … knew of [the agent's] misconduct and allowed it to occur ….").

Applying § 1303.505 here, there is not a single allegation in Plaintiffs' Amended Complaint demonstrating that Dr. Burke **actually knew** of allegedly willful, wanton or recklessly indifferent treatment by his purported agent and nonetheless allowed the outrageous conduct to continue unabated.  In the absence of such allegations and evidence, Plaintiffs cannot state a claim for punitive damages against Dr. Burke.

### D.   PLAINTIFFS' NEGLIGENCE PER SE CLAIM PURSUANT TO THE OSTEOPATHIC MEDICAL PRACTICES ACT AND PENNSYLVANIA MEDICAL PRACTICE FAILS AS A MATTER OF LAW

#### a.   Osteopathic Medical Practices Act/Medical Practice Act

When considering whether the negligence *per se* doctrine is applicable, it is important to consider whether the statute provides a private cause of action for a violation of that statute. Wagner v. Anzon, Inc., 453 Pa. Super. 619, 630, 684 A.2d 570, 575 (1996), appeal denied, 549 Pa. 704, 700 A.2d 443 (1997). "This is so because the private causes of action and negligence *per se* 'address the question of whether the policy behind the legislative enactment will be appropriately served by using it to impose and measure civil damages liability. . .Therefore, **the absence of a private cause of action in a statutory scheme is an indicator that the statute did not contemplate enforcement of individual harms.' "** Id. (internal citation omitted) (emphasis added).

Here, Plaintiffs seek a private remedy under the following statutes:  The Osteopathic Medical Practices Act and Pennsylvania Medical Practice Act, 63 Pa. Stat. Ann. , §422.1-422.51(a) (West 2010). Importantly, nothing in the language of the statutes cited by the Plaintiffs expressly provides for a private right of action.  Alfred M. Lutheran Distributors, Inc. v. A.P. Weilersbacher, Inc., 437 Pa. Super. 391, 400, 650 A.2d 83, 87 (1994), appeal denied, 540 Pa. 627, 658 A.2d 791 (1995). Thus, it is clear that neither the General Assembly or the State Board of Osteopathic Medicine contemplated private enforcement for individual harms.

Accordingly, the absence of a private right of action under the above cited statutes is a clear indication that Plaintiffs' negligence *per se* claims, are without merit.

**b.   Statutes Cited by Plaintiffs Do Not Clearly Apply to the Conduct of Moving Defendant.**

In order to establish a claim based on negligence *per se*, a Plaintiff must meet the following four requirements:  (1) the purpose of the statute is to protect the interest of a group of individuals, as opposed to the general public; (2) the statute clearly applies to the conduct of the Defendant; (3) the Defendant must violate the statute or regulation; and (4) the violation of the statute or regulation must be the proximate cause of the Plaintiff's injuries.  Cabiroy Scipione, 767 A.2d 1078, 1081 (Pa. Super. 2001); Wagner, 453 Pa. Super. At 627, 684 A.2d at 574.

"While the violation of a statute or regulation may provide the basis for a finding of negligence *per se*, it is well established that not every breach of a statutory duty imposes liability. Chalfin v. Beverly Enterprises, Inc., No. 87-3319, 745 F. Supp. 1117, 1119 (ED.PA 1990) (internal citations omitted).  In Chalfin, the court reiterated that "before the violation of a statute will be deemed negligence *per se*, the court must find that the "intent of the statute was at least in part, to protect the interest of the Plaintiff individually, as opposed to the public". Id.

16

The Pennsylvania Supreme Court generally follows the concepts set forth in the Restatement of Torts (Second) when analyzing the standards of conduct that a court may adopt to determine when and to whom a duty exists in negligence cases. Id. at 1120. Section 288 of the Restatement of Torts (Second) sets forth principles that determine when a standard of conduct defined by Legislation or regulation should *not* be adopted:

> The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively. . .to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public.

Restatement of Torts (Second), §288(c).

Further, the comment to Section 288(c) states:

> Other legislative enactments and administrative regulations are intended for the purpose of imposing upon the actor the performance of a service which the State, or some subdivision of it, has undertaken to give to the public. They are intended to make the actor responsible to the State, **rather than to any individual.**

Restatement of Torts (Second), §288(c), comment d (emphasis added).

In Frantz v. HCR Manor Care Inc., No. S-2374-2002, 2003 Pa. Dist. & Cnty. Dec. LEXIS 169; 64 Pa. D.&C.4th 457, 464-5 (Dec. 12, 2003), the court noted the Wagner finding that negligence *per se* is also recognized in the Restatement of Torts (Second), § 286:

> "The court may adopt as a standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part,
>
> "(a)  to protect a class of persons which includes the one whose interest is invaded, and
>
> "(b) to protect the particular interest which is invaded, and
>
> "(c)  to protect that interest against the kind of harm which was resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."[3]

There is absolutely no legal and/or factual basis to support such a claim. Plaintiffs' pleading amounts to an admission that their claim in this matter amounts to nothing more than a claim for medical malpractice. These legislative enactments were clearly intended for the purpose of making the actor **responsible to the State, rather than to any individual**. Restatement of Torts (Second) § 288(c), cmt. D (emphasis added).

The negligence *per se* claims fail for the independent and alternative reasons that the statutes at issue do not clearly apply to the conduct of the Defendant here. Thus, Plaintiffs' negligence *per se* claims are without merit. Secondly, Pennsylvania law does not provide for negligence *per se* in cases of medical malpractice. In malpractice cases, a jury will not be permitted to find negligence without expert testimony to establish variance from accepted medical practice. Hamil v. Bashline, 98 Pa. 256, 393 A.2d 1280 (1978); See also, Maurer v. Trustees of the Univ. of Pennsylvania, 418 Pa. Super. 510, 614 A.2d, 754 (1992), appeal granted, 626 A.2e 1158 (1993). Plaintiffs have failed to produce expert testimony to sustain a *prima facie* case of negligence. Consequently, Plaintiffs cannot sustain that their burden of proof that a violation of either statute proximately caused Plaintiffs' injuries.

Plaintiffs' prayer for relief for punitive damages attendant to this claim fails to state a claim upon which relief can be granted and Moving Defendant incorporates herein by reference the punitive damages section of this Memorandum.

---

[3] However, Wagner held: "Negligence *per se* does not apply where the purpose of the statute or regulation is to secure the individual's enjoyment of rights or privileges to which they are entitled only as members of the public."

E.   **PLAINTIFFS FAIL TO STATE A CLAIM PURSUANT TO UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("UTPCPL") AND UNDER COMMON LAW FRAUD AND NEGLIGENT MISREPRESENTATION**

In Plaintiffs' Amended Complaint at Courts III, IV, and V, they assert that Moving Defendant is liable under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and common law fraud, and liable for negligent misrepresentation.  Simply stated, Plaintiffs cannot meet their burden of proof with respect to these claims.  First, Pennsylvania courts have held that the UTPCPL does not afford a private cause of action against doctors therefore, Plaintiffs' UTPCPL claim is strictly prohibited, under Pennsylvania law.  Second, there is no evidence of record to show that Dr. Burke and Plaintiff had a consumer-seller relationship, or any relationship for that matter.  Third, the record is devoid of evidence to show that Dr. Burke acted fraudulently and with the intent to deceive Plaintiff-wife in the purchase of the laser hair removal services.  In addition, Plaintiffs cannot show that Mrs. Charleston relied upon any misrepresentations made by Dr. Burke with respect to the services purchased, since she had no dealings with Dr. Burke respecting these services.

Plaintiffs' claim under the UTPCPL is impermissible, as a matter of law.  It is well-established the UTPCPL does not apply to those persons or entities which provide medical services.  See Walters v. Warren Hospital, 876 A.2d 400, 407 (Pa.Super. 2005), *aff'd. per curiam,* 588 Pa. 739 (2006),  Gatten v. Merzi, 579 A.2d 974 (1990), *allocatur denied*, 596 A.2d 157 (1991); Foflygen v. Zemel, 615 A.2d 1345 (1992).  The Pennsylvania Superior Court in Gatten v. Merzi, 579 A.2d 974, 976 (1990) upheld the dismissal of Plaintiffs' UTPCPL claim against her doctor, premised upon an allegation that the surgery results were not as good as had been predicted by the doctor.  In so ruling, the Superior Court reasoned that the intent of the UTPCPL was not to render physicians absolute guarantors of their treatments and anticipated

19

results.  To premise the liability of doctors based on statements about the course of treatment

"would have the effect of making a physician the absolute guarantor of both his treatment and

the anticipated results even in the absence of a specific contract warranting those results, thereby

rendering physicians "the guarantors of their fault free work." Id.  Likewise, the court in

Foflygen v. R. Zemel, M.D. (P.C.), supra, concluded that the UTPCPL is "inapplicable to

providers of medical services" and does not provide for a right of action against providers of

professional services.  Id.  Because Dr. Burke was a licensed physician, Plaintiff does not have a

private right of action under the UTPCPL against him.

     The Pennsylvania legislature enacted the UTPCPL with the purpose of protecting the

public from fraud or unfair and deceptive business practices. See 73 P.S. §201 et. seq; see also

Pirozzi v. Penske Olds Cadillac-GMC, Inc., 605 A.2d 373, 375 (Pa.Super. 1992).  Because the

underlying foundation of the UTPCPL is fraud prevention, the law is to be liberally construed to

effect that purpose.  Hampton v. Geico Gen. Ins. Co., 2010 U.S. Dist. LEXIS 131450 (W.D.Pa.

2010), citing Creamer v. Monumental Prop., Inc., 459 A. 450, 329 A.2d 812 (1974).  In

Pennsylvania, a claim under the UTCPL carries the same burden of proof for a Plaintiff, as a

claim for common law fraud.  See Santana Prods. v. Bobrick Washroom Equip., Inc., 401 F.3d

123, 136 (3rd Cir. 2005), citing Viguers v. Philip Morris USA, Inc., 837 A.2d 534 (Pa.Super.

2003).

     The requisite elements of common law fraud include:  1) a representation; 2) which is

material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness

as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5)

justifiable reliance on the misrepresentation; and 6) the resulting injury was proximately caused

20

by the reliance.[4]  See Restat. (2d) of Torts, §525; see also Feeney v. Disston Manor Personal

Care Home, Inc., 849 A.2d 590 (Pa.Super. 2004), citing Blumenstock v. Gibson, 811 A.2d 1029,

1034 (Pa.Super. 2002).  To establish fraud under the UTPCPL, Plaintiffs must prove scienter

(Restat. (2d) of Torts, §526), and actual reliance. Santana, *quoting* Island Insteel Systems, Inc. v.

Darrin Waters.  296 F.3d 200, 204, 44 V.I. 389 (3rd Cir. 2002).  Plaintiffs must prove their

allegations of fraud by clear and convincing evidence . See Feeney, supra.  Instantly, the record

has no evidence to support a *prima facie* claim of fraud, against Moving Defendant.  It goes to

follow, that Plaintiffs cannot meet their burden of proof under the UTPCPL, or negligent

misrepresentation since the elements of proof are the same as for fraud.

In order for Plaintiffs to defeat a Motion for Summary Judgment, they must identify

specific material issues of fact and the specific evidence in the record which creates the material

issue of fact.  See Insteel, at [*57].  Plaintiffs' broad allegations and contentions as to the

existence of general issues of material fact are not admissible evidence, and should not be

considered in ruling upon a Motion for Summary Judgment.  Id.  First, Plaintiffs have no private

right of action under the UTCPL against Dr. Burke, a physician.  See Wilson, *supra*; Foflygen,

*supra*.  Presently, there is no material evidence of record to show that Plaintiff and Dr. Burke had

a seller-consumer relationship as contemplated by the UTPCPL. See Wagner v. Future Planning

Assocs., 2010 U.S. Dist. LEXIS 11973 (W.D. Pa. 2010), *citing* Edkin v. The Travelers

Companies, 3 Pa.D.&C.4th 557 (1988).   Further, there is no evidence of record to support a

*prima facie* claim of fraud under the UTPCPL, which includes scienter on the part of Dr. Burke.

Based on the foregoing, summary judgment should be entered for Dr. Burke, as to Plaintiff's

claims pursuant to UTPCPL, common law fraud, and negligent misrepresentation.

---

[4] The elements of a negligent misrepresentation are the same for common law fraud and fraud under the UTPCPL.

21

**F.   PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR LACK OF INFORMED CONSENT UNDER PENNSYLVANIA LAW AND ACCORDINGLY, PLAINTIFFS' CLAIM AGAINST MOVING DEFENDANT FOR VICARIOUS LIABILITY ON INFORMED CONSENT CLAIM FAILS AS A MATTER OF LAW**

Under Pennsylvania law, a physician is required to obtain consent from his patient concerning any non-emergency procedure enumerated in the Medical Care Availability and Reduction Act (MCARE) 40 P.S. § 1303.504.  The Act requires the physician to obtain the patient's full, knowing, and voluntary informed consent prior to the following procedures:

(1)  Performing surgery, including the related administration of anesthesia.

(2)  Administering radiation or chemotherapy.

(3)  Administering a blood transfusion.

(4)  Inserting a surgical device or appliance.

(5)  Administering an experimental medication, using an experimental device or using an approved medication or device in an experimental manner.

See, 40 P.S. § 1303.504 (a).  The doctrine of informed consent is limited and applies only to the procedures enumerated above.

The law requires that the patient be advised as to those material facts, risks, complications and alternatives that a reasonable person in the patient's situation would consider significant in deciding whether to undergo the procedure. Moure v. Raeuchele, 386 Pa. Super. 127, 563 A.2d 1217 (1989), rev'd on other grounds, 529 Pa. 394, 604 A.2d 1003 (1992).   In order to constitute a valid consent, the patient must be informed of the material risks of the procedure prior to surgery.  Absent this "informed consent," the physician may be held liable to Plaintiff, under a theory of battery, for injuries arising from the undisclosed risk. Gray v. Grunnagle, 423 Pa. 144, 223 A.2d 663 (1968);  Cooper v. Roberts, 220 Pa. Super. 260, 286 A.2d 647 (1971).

22

Pennsylvania courts have consistently and repeatedly held that the doctrine of informed consent applies solely to the surgeon performing surgeries and that the doctrine is based upon "battery", not negligence, principles. Moure v. Raeuchle, 604 A.2d 1003, 1008 n.8 (Pa. 1992); Shaw v. Kirschbaum, 439 Pa. Super. 24, 653 A.2d 12 (1994). Without "offensive touching", Pennsylvania courts have consistently refused to invoke the informed consent doctrine. See Moure v. Raeuchle, 604 A.2d 1003, 1008 n.8 (Pa. 1992) (the "tort founded upon lack of informed consent is an intentional tort, i.e., a battery;" thus, the issue of negligence is not germane).

The burden is on plaintiff to make out an informed consent claim and, as part of that burden, plaintiff must present competent and credible expert testimony to determine whether the procedure at issue constituted the type of procedure which necessitates informed consent and to establish the existence of risks in the specific medical procedure, the existence of alternative methods of treatment, and the risks attendant to those alternatives. Maliszewski v. Rendon, 542 A.2d 170, 172 (Pa. Super. 1988); Festa v. Greenberg, 354 Pa. Super. 346, 511 A.2d1371, appeal denied, 515 Pa. 580, 527 A.2d 541 (1986). Once these three elements are established by expert testimony, it remains for the trier of fact to determine the materiality of those risks. If plaintiff does not have competent expert testimony to support his informed consent claim, then he has failed to present a *prima facie* informed consent claim, and the claim must fail. Id.

Under MCARE, a plaintiff must also establish the element of causation in order to set forth a viable claim for lack of informed consent. Specifically, a physician is liable for failure to obtain informed consent of a patient only if the patient proves that receiving such information would have been a substantial factor in his decision whether to undergo that procedure.

Clearly, the doctrine of informed consent is inapplicable to the facts of this case. Laser hair removal is not an invasive procedure, does not constitute surgery, and does not fall within these

23

enumerated procedures for which there is a duty to obtain informed consent.  Without a legal duty, there can be no liability (direct or vicarious).  Without expert testimony, the trier of fact is precluded from making a finding of lack of informed consent.

As Plaintiffs have failed to produce expert testimony as mandated under Pennsylvania law, Plaintiffs have failed to make out a *prima facie* informed consent claim and consequently, any claim for vicarious liability against Dr. Burke for failure to obtain informed consent necessarily fails as a matter of law.

### G.    PLAINTIFF-WIFE'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW

In the Amended Complaint at Count VIII, Plaintiff-wife alleges generally that all Defendants, are liable for negligent infliction of emotional distress based upon a fiduciary duty owed to Plaintiff as a patient undergoing a medical procedure.  As Plaintiff cannot sustain her burden of proof, Moving Defendant is entitled to judgment in his favor as a matter of law.

In Pennsylvania, the cause of action for negligent infliction of emotional distress is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of [**198] danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative.  Toney v. Chester County Hospital, et al, 961 A.2d 192, 2008 Pa. Super. 268, citing Doe v. Philadelphia Community Alternatives AIDS Task Force, 2000 Pa. Super. 6, 745 A.2d 25, 26 (Pa. Super. 2000), aff'd 564 Pa. 264, 767, A.2d 548 (2001).

Under this theory of recovery, Plaintiff must establish the elements of a negligence claim, namely, that the defendant owed a duty of care to Plaintiff, the Defendant breached that duty, the breach resulted in injury to the Plaintiff, and the Plaintiff suffered actual harm.  Toney, supra;

24

Brown v. Philadelphia College of Osteopathic Medicine, 2000 Pa. Super. 262, 760 A.2d 863, 868

(Pa. Super. 2000), appeal denied, 566 Pa. 632, 781 A.2d 137 (2001), quoting Martin v. Evans, 551

Pa. 496, 502, 711 A.2d 458, 461 (1998).

Plaintiffs have produced no evidence to establish that Dr. Burke owed a fiduciary duty to

Plaintiff-wife.  In fact, the evidence of record proves otherwise.  By Plaintiffs' own admission, she

never met Dr. Burke, never spoke to him, nor ever received any literature bearing Dr. Burke's name

or that described him as the Medical Director.  Dr. Burke had terminated his relationship with Salon

Secrets in April 2006, while Mrs. Charleston was treated therein February, 2007.  Moreover,

Dr. Burke never used the Harmony device on Mrs. Charleston.  Therefore, there was no special

direct relationship between Dr. Burke and Mrs. Charleston for which a duty of care was owed.

As set forth previously herein, Plaintiffs have failed to produce any expert testimony to

establish any of the requisite elements of a negligence claim.  Consequently, Plaintiffs have not,

and cannot establish a *prima facie* case.

## IV.     CONCLUSION

For all the foregoing reasons, Moving Defendant, Thomas J. Burke, D.O. respectfully

requests that summary judgment be granted in his favor and that all claims and cross-claims against

him be dismissed with prejudice.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN


BY: *Carolyn B. DiGiovanni*

E. CHANDLER HOSMER, III, ESQUIRE
CAROLYN B. DIGIOVANNI, ESQUIRE
Attorneys for Defendant,
Thomas J. Burke, D.O.

Date: *January 14, 2011*

25

26/1618832.v1/08064.00112
MARSHALL, DENNEHEY, WARNER
COLEMAN & GOGGIN
BY:    E. CHANDLER HOSMER, III, ESQUIRE          ATTORNEY FOR DEFENDANT,
         ATTORNEY ID NO.: 28499                            Thomas J. Burke, D.O.
620 Freedom Business Center, Suite 300
King of Prussia, Pa 19406
Phone:  (610) 354-8250 / Fax: (610) 354-8299
echosmer@mdwcg.com

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH CHARLESTON & LARRY CHARLESTON (w/h), | : | CIVIL ACTION |
|              Plaintiffs | : | |
| | : | |
|      v. | : | NO.  08-5889 |
| | : | |
| SALON SECRETS DAY SPA, INC. and PT LASERS, LLC and PAMELA A. TROYAN and BARBARA A. LINDNER and THOMAS J. BURKE, D.O. and JOHN DOE, Nos. 1 – 5, | : : : : | |
|              Defendants | : | |

**CERTIFICATE OF SERVICE**

I, CAROLYN B. DIGIOVANNI, ESQUIRE, do hereby certify that a true and correct

copy of the Motion for Summary Judgment and/or Motion to Dismiss on behalf of Defendant,

Thomas J. Burke, D.O. was electronically filed with the Court on **January 14, 2011**, and is

available for viewing and downloading from the EFS.

Andrew D. Swain, Esquire
The Swain Law Firm, P.C.
Neshaminy Valley Commons
2410 Bristol Road
Bensalem, PA  19020

9

Victoria M. Komarnicki, Esquire
BENNETT, BRICKLIN & SALTZBURG
1601 Market Street
16th Floor
Philadelphia, PA 19103

Glenn A. Ricketti, Esquire
The Curtis Center
170 S. Independence Mall W.
Suite 400E
Philadelphia, PA  19026

J. Patrick Holahan, II, Esquire
113 S. Broad Street
P.O. Box 818
Kennett Square, PA  19348

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

By: _____
      E) CHANDLER HOSMER, III, ESQUIRE
      CAROLYN B. DIGIOVANNI, ESQUIRE
      Attorneys for Defendant,
      Thomas J. Burke, D.O.